## GREENWOOD *vs.* SPRING and others.

A person standing in the position of agent of both parties cannot execute a mortgage as the attorney of one, for the benefit of the other.

A contract made by an individual as the agent of both parties, is not void, but only voidable, at the election of the principal, if he come into court within a reasonable time.

It is not necessary for a party seeking to avoid such a contract to show that any improper advantage has been gained over him. It is at his option to repudiate, or affirm, the contract, irrespective of any proof of actual fraud.

But unless application be made, within a reasonable time, to set it aside, a valid title will pass, if it be upheld by a sufficient consideration and the proper forms have been observed.

If application to set aside such a contract be not made within a reasonable time, the delay will be considered a waiver.

S., being indebted to the plaintiff, the latter applied to him personally for a

mortgage on certain land, as security for the debt. S. refused to give it. The plaintiff then telegraphed to A. to attach S.'s property for the debt. A. at the time held a power of attorney from S. & K. authorizing him to lease, *mortgage*, sell and convey any lands or tenements, &c., that they or either of them had, or that they should afterwards become possessed of, within the State of New York; to make, execute and deliver contracts, deeds, &c.; and to collect and receive all debts, dues, &c. Instead of attaching the property of S., as directed by the plaintiff, A., as attorney in fact for S., executed a mortgage upon the property of S., to the plaintiff, for the amount of his debt, and delivered it to his law partner, for the plaintiff, who afterwards accepted it. *Held* that A. being, by the telegram, constituted the agent and attorney of the plaintiff for collecting or securing the particular debt against S., could not, as the attorney in fact of S., execute a mortgage upon S.'s land, to secure the payment of such debt. And that the mortgage was voidable, and must be declared a nullity, unless S. was to be deemed, by his delay, to have waived that defense.

*Held, also,* that a delay of one year, in setting up the defense, by S., when it was interposed to an action of foreclosure, brought by the mortgagee, was not an unreasonable delay; more especially as the plaintiff parted with no new consideration, and there was no evidence in the case from which the court could infer that he had lost any rights, security, benefit or advantage.

*Held, further,* that the power to A. did not authorize him to execute a mortgage as security for a debt or liability of his principal then existing.

That the plaintiff was not a *bona fide* holder for value; no new consideration being parted with, by him, as a condition for the mortgage, nor any antecedent debt discharged. That it was simply given as security for a prior indebtedness; and that, too, after a refusal by the principal.

That he held his mortgage as security for an antecedent debt, and took it with full knowledge, as the law presumes, of the nature and extent of the power under which the agent who made it assumed to act; and being beyond the scope of the power, it was void, and could not be enforced.

APPEAL from a judgment entered in a cause tried before the court, without a jury.

*Wm. C. Brown,* for the plaintiff.

*C. G. Myers,* for the defendants.

*By the Court,* JAMES, J.   This was an action to foreclose a mortgage. The defendant Spring was the mortgagor, and the other defendants his judgment creditors. The

mortgage was made and delivered by A., as the attorney in fact of Spring, in consideration of, and as security for, a prior indebtedness of Spring to the plaintiff. The parties all reside in Boston. The plaintiff applied to Spring, personally, for a mortgage on the lands in question, as security for his debt, which Spring refused. The plaintiff then telegraphed to A. to attach Spring's property for the debt. A. at the time held a power of attorney from I. S. Kelly and Chas. Spring, authorizing him " to lease, mortgage, sell and convey, to any person or persons, either in whole or in part, any lands or tenements, or any interest therein, that they or either of them then had, or that they should afterward become possessed of, within the State of New York, and for them and in their names, or in the name of either of them, to make," &c. Instead of attaching the property of Spring, as directed by Greenwood, A. made the mortgage in question and delivered it to his law partner, for the plaintiff; and the plaintiff, when the same afterward came to his knowledge, accepted it.

It was claimed on the trial below, and so held by the court, that A. was the agent of both parties, and standing in that position he could not execute a mortgage as the attorney of one, for the benefit of the other.

A party who is of capacity sufficient to do an act himself may do it by attorney. Of Spring's capacity no question is made. The authority in this case was under seal.

A contract made by one individual as the agent of both parties is not void, (14 *John.* 418,) but only voidable, at the election of the principal, if he come into court on timely application. (5 *Vesey,* 678. 4 *Cowen,* 718.) The rule seems to be founded on the danger of imposition; and such agreements are regarded as constructively fraudulent. (9 *Paige,* 242.) It is not necessary for a party seeking to avoid such a contract to show that any improper advantage has been gained over him; it is at his

option to repudiate, or affirm, the contract, irrespective of any proof of actual fraud. (4 *Kern.* 91.) But unless application be made within a reasonable time to set it aside, a valid title will pass, if it be upheld by a sufficient consideration, and the proper forms have been observed. If application to set it aside be not made within a reasonable time, the delay will be considered a waiver. (4 *Cowen,* 718.) It is a defense, too, solely personal to the principal. (5 *Pick.* 519.) Like usury and the statute of limitations, neither trustees, assignees or creditors can avail themselves of such defense.

As between the plaintiff and the defendants, who are creditors, the equities are equal. In this case, however, the principal himself repudiates the mortgage; and if the defense is good as to him, being fatal to the mortgage, it is beneficial to the other defendants.

But the plaintiff insists that A. was not his agent or attorney, nor did he act as such in this transaction; that his instructions were to attach Spring's property, which he wholly disregarded and ignored; that whatever A. did in this matter, he did as the agent of Spring. I am unable to reconcile the facts with any such construction. The telegram constituted A. or his firm the attorneys and agents of Greenwood for the particular debt against Spring; and it was that telegram that caused A. to act in the matter of securing such debt. It was A., the attorney at law, who set A., the attorney in fact, in motion, and produced the mortgage from his principal to his client.

In this view the mortgage was voidable, and must be declared a nullity, unless the defendant Spring, by his delay, be deemed to have waived this defense. The mortgage was made June 15, 1855, and it came to Spring's knowledge the next month. No steps were taken to set it aside. This action was commenced about one year after the date of the mortgage, and then this defense interposed. What is a reasonable time cannot very well be defined,

Greenwood *v.* Spring.

nor has any general rule been established. It must, in a great measure, depend upon the exercise of sound discretion by the court, under all the circumstances of each particular case. The master of the rolls, in a case in *Cooper's Ch. Cases*, 207, refused to set aside a purchase by a trustee after a lapse of eighteen years. In *Bryan* v. *Burnett*, (1 *Caines' Cases*, 1,) the court refused the application after sixteen years' acquiescence. In *Butler* v. *Haskell*, (1 *S. Car. Rep.* 42,) the court did not consider eleven years an unreasonable delay; and in many cases relief has been granted after a much longer period. (14 *Vesey*, 91, 214. 9 *id.* 292.) From these authorities I cannot say that a delay of one year in a case like this was unreasonable; more especially as the plaintiff parted with no new consideration, and there is no evidence, in the case, from which the court can infer that he has lost any right, security, benefit or advantage.

I am, therefore, of the opinion that this defense of double agency is fatal to the validity of the mortgage.

The defendant further insists that the power to A. did not authorize him to execute a mortgage as security for a debt or liability of his principal. The power contained a full authority "to lease, mortgage, sell and convey any lands, and to make, execute and deliver good and sufficient contracts, deeds and conveyances &c., and to collect and receive all debts, dues, rents, accounts or other demands whatsoever that are or may be owing to us, or either of us, giving and granting unto our said attorney full power," &c. The extent of the power, and the purpose for which it was given, must be determined from the instrument itself. It can neither be enlarged nor restricted by parol. When a power authorizes acts in respect to a particular trade, business or agency, parol evidence of the usages of such trade, business or agency may be received for the purpose of interpreting the powers actually given. But such principle has no application to this case. It related to no particular trade, business or agency. The power to

mortgage and sell was complete; it included not only the present land of either or both principals, but the after-acquired property of both or either; the quantity to be sold, the price and terms of payment, were left entirely to the judgment and discretion of the agent; but payment was evidently contemplated at some time, and the power conferred upon the agent authority to receive and collect debts that were, or might be, owing to them, or either of them.    There is nothing in the power from which it can be inferred that the principals, or either of them, intended to confer upon the agent the authority to secure their indebtedness, or any part of it, at his option, by a sale or mortgage of their property, and the instrument cannot be so construed.    Indeed all written powers should receive a strict interpretation, and the authority never be extended beyond its express terms, or what is absolutely necessary for carrying the authority so given into effect.    (*Paley on Agency*, 192.)    Thus a power to sell, assign and transfer stock, has been held not to include a power to pledge it for the agent's own debt.    (5 *Vesey*, 211.)    A power of attorney, given by a mill company to their agent to manufacture their logs into lumber, and transport them to market and sell and dispose thereof for the company's benefit, will not authorize the agent, without the knowledge of the directors of the company, to deliver over the lumber at the company's mills, in payment of securities given by the agent, on behalf of the company, in the course of his agency.    (1 *Kern.* 327.)    So a letter of attorney, empowering an agent to negotiate, compromise, adjust, determine, settle and arrange all differences and disputes between the principal and all persons whatsoever, and to execute and sign, in the name of the principal, any release, covenant or conveyance of any part of the principal's estate, and to give and receive discharges, receipts, &c., has been held not to authorize the agent to confess a judgment in the name of his principal.    (1 *Ind. Rep.* 252.    *Story on Agency*, §§ 82,

Greenwood *v.* Spring.

83, 84.) So in this case the power was to lease, mortgage and sell, giving full power to the agent to manage, control and dispose of the principals' real estate, for their use and benefit; but not for the purpose of securing any one or more of their debts.

But in this case the power to mortgage is given in express terms, and it is only as to the purpose for which the mortgage was given that it is claimed to be unauthorized. It may now be regarded as settled, in this State, even in case of a note made by an agent, that the party receiving it "is bound to look to the power, and in so doing must take notice of its legal effect at his peril; he is bound to see that the attorney does not go beyond his power by making and indorsing notes for the benefit of himself or persons other than his principal." (*Stainer* v. *Tyson*, 3 *Hill*, 279. *North River Bank* v. *Aymar*, *Id*. 262; approved, *Farmers and Mechanics' Bank* v. *Butchers and Drovers' Bank*, 16 *N. Y. Rep*. 125, 139, 143.) "It is a general rule, that when an attorney does any act beyond the scope of his power, it is void as between the appointee and principal. The ground on which the rule rests is this: the appointee need not deal with the attorney unless he choose; if he do, he is bound to inspect the power, and shall be holden to understand its legal effect, and must see at his peril that the attorney do not go beyond it." (3 *Hill*, 266.)

In this case the plaintiff is not a *bona fide* holder for value: no new consideration was parted with by him as a condition for the mortgage; nor was any antecedent debt discharged. It was simply given as a security for a prior indebtedness, and that, too, after a refusal by the principal. The plaintiff is not, therefore, entitled to any consideration as an innocent *bona fide* holder of paper authorized by the principal, but perverted from its original purpose, by the agent. He holds his mortgage as security for an antecedent debt; he took it with full knowledge, as the law pre-

sumes, of the nature and extent of the power under which the agent who made it assumed to act; and being beyond the scope of the power, it is void, and cannot be enforced.

The judgment must be affirmed.

[SARATOGA GENERAL TERM, July 14, 1857. *C. L. Allen, James* and *Rosekrans,* Justices.]