## No. 4107.

### A. BOWER VS. W. A. JOHNSON ET AL.

On the thirty-first of January, 1870, the plaintiff received from Bruce, Simpson & Co., merchants of Liverpool, a telegraphic dispatch offering for sale five hundred bales of good middling cotton at a certain price per pound, and offering to hold the same if covered by a proper margin. The plaintiff thereupon communicated the dispatch to several parties, to wit: W. A. Johnson, Hugh Allison & Co., R. L. Adams & Son, and L. N. Lane, who severally agreed to take each one-fourth of the cotton, and each deposited in the hands of the plaintiff a margin of ten dollars per bale on his share. Plaintiff promptly notified Bruce, Simpson & Co. of the acceptance of their offer, and remitted to them the several sums put up by the defendants as margins. The order was filled in accordance with the agreement, and the cotton was held by Bruce, Simpson & Co. in the name of the plaintiff. In March, 1870, Lane ordered his share of the cotton to be sold, which was done, resulting in a loss which he paid to plaintiff.

The defendants continued to hold their cotton until July, 1870, when, the price of the article having declined to a point which rendered the original margin an insufficient security, Bruce, Simpson & Co. telegraphed the plaintiff for additional margin. This demand was communicated to defendants, who refused to comply, whereupon Bruce, Simpson & Co. sold, also at a loss, which plaintiff paid for, and for the loss he sues the defendants, each for a specified sum, with interest at eight per cent from the fourteenth of November, 1870.

The attitude in which the plaintiff stood in this transaction seems to have been that of the common agent of two principals, foreign as regards each other. He is therefore responsible to each in his capacity of agent.

There were none of the elements of partnership between the several parties who bought the five hundred bales of cotton. It was not a joint adventure between the parties, as the evidence shows. Each party could dispose of his share without consulting the others. Each contracted for himself, and intended in no manner to be bound for more than his share, which he might sell at will without affecting the rights of the other parties or being controlled by them.

The defense, on the whole, has no force, and the judgment of the court a qua against defendants is affirmed, with a modification in the rate of interest allowed, which must be reduced from eight per cent to five per cent.

APPEAL from the Fourth District Court, parish of Orleans. *Theard, J. Breaux, Fenner & Hall,* for plaintiff and appellee. *Thomas, Hunter & Grover, W. M. Randolph,* for defendants and appellants.

TALIAFERRO, J. This controversy, it appears, grew out of the following state of facts:

On the thirty-first of January, 1870, the plaintiff received from Bruce, Simpson & Co., merchants of Liverpool, a telegraphic dispatch offering for sale five hundred bales of good middling cotton at 11⅞ pence sterling per pound, and offering to hold the same if covered by a proper margin. The plaintiff thereupon communicated this dispatch to several parties, and the defendants, W. A. Johnson, Hugh Allison & Co., R. L. Adams & Son, and L. N. Lane, severally agreed each to take one-fourth of the cotton, and each deposited in the hands of the plaintiff a margin of ten dollars per bale on his share (one hundred and twenty-five bales), amounting to twelve hundred and fifty dollars each. Plaintiff, as appears, promptly notified Bruce, Simpson & Co. of the acceptance of the offer, and remitted to them the several sums put up by the defendants as margins. The order was filled in accordance with the agreement and the cotton was held by Bruce, Simpson & Co. in the name of the plaintiff for account of defendants. In March, 1870, Lane ordered his share of the cotton to be sold, which was done, resulting in a loss of $654 23, which he paid to plaintiff. The defendants continued to hold their cotton until July, 1870, when the price of the article had declined to a point which rendered the original margin an insufficient security. Bruce, Simpson & Co. telegraphed the plaintiff, requiring additional margin. This demand was communicated to the defendants, who refused to comply, whereupon Bruce, Simpson & Co. sold the cotton at a loss, which, it seems, the plaintiff paid, and for this loss he now sues the defendants. He claimed from W. A. Johnson $1902 72, with eight per cent interest from fourteenth November, 1870, from Hugh Allison & Co. $1857 23, with like interest from the same time, and from R. L. Adams & Son $1853, with like interest from the same time.

The answer admits that the defendants, together with plaintiff, agreed to buy the proposed lot of cotton, each to become interested to the extent of one undivided fourth part; that in a day or two after the plaintiff informed them that the offer of Bruce, Simpson & Co. had been accepted for their and his account; that a margin of ten dollars per bale was required, and that each of the defendants paid to the plaintiff the required margin, being $1250 paid by each of them.

They allege that at the time they consented to purchase the said cotton it was understood and believed by the parties that the plaintiff was to take one-fourth of it, and that the name of Lane was never mentioned to them in connection with said purchase; nor was it ever mentioned until long after the purchase and sale of the cotton that Lane had any interest in it, and they declared they never authorized a joint purchase of the cotton with Lane.

The defendants allege they have been informed and believe the fact to be that at the time the cotton was pretended to be purchased by Bruce, Simpson & Co. the whole lot of cotton had been bought by the plaintiff in New Orleans, and had been shipped to and was afterward sold by Bruce, Simpson & Co. for his account; that a portion of the cotton purporting to have been sold by them, or the whole of it, was afloat and had not been received by them, and was not in their possession at the date of the alleged purchase, but had been previously purchased by the said plaintiff, who by false representations had induced these defendants to embark in this adventure to save himself from any possible loss on account of his purchases.

The defendants aver that after the date of the alleged purchase R. L. Adams instructed the plaintiff, who had assumed control and management of the adventure, to sell or order to be sold the whole of said cotton when it was worth in Liverpool 12¾ pence per pound, but that plaintiff refused to do so. They allege that plaintiff ought to have sold the cotton at that time if he had as agent or partner authority to sell.

The defendants deny any indebtedness to the plaintiff, and each claims from him in reconvention the sum of $1250, the margin in which by false representations he induced them respectively to pay to him, and the further sum of $1000, with interest on both sums from the second of January, 1870.

The plaintiff had judgment, and the defendants have appealed.

It is proper to inquire what kind of contract did these parties enter into, and what was their relative position toward each other. Bruce, Simpson & Co. propose by telegram to Bower in these terms:

"We can offer you, subject to your reply per cable, on the day after the receipt of our message, five hundred bales middling Orleans at 11⅞ pence per pound here. We will hold, if you will have us covered for £1000."

The answer of Bower is: "Your cable offering of five hundred bales cotton, good middling, Orleans classification, at 11⅞, and to be held covered by £1000 margin, received and accepted by my friends. I remit the required margin. * * * You will not sell unless at a fair profit. * * * I have interested in that purchase four parties, each 125 bales, with the privilege of disposal of his share whenever required to do so by cable."

Here is no privity between Bruce, Simpson & Co. and these parties defendants. The latter go into the adventure at the instance of and with Bower. They paid to him their respective margins, and looked alone to him as responsible to them for any profits that might accrue to them by the operation. Bower, on the other hand, was the person alone with whom Bruce, Simpson & Co. dealt, and to whom alone they could look for losses they might sustain. The attitude in which Bower stood

seems to be that of the common agent of two principals, foreign as regards each other, and is therefore responsible to each. "Upon the ground of general convenience and the usage of trade," said Judge Story in his Treatise on Agency, section 269, "the rule has obtained that agents or factors acting for merchants resident in a foreign country are held personally liable upon all contracts made by them for their employers; and this without any distinction, whether they describe themselves as agents or not in the contract. In such a case it is presumed that the credit is given to the agents or factors; and the ordinary presumption is, not only that credit is given to the agents, but that it is exclusively given to them to the exoneration of their employers. Still, however, this presumption is liable to be rebutted, either by proof that credit was given to both principal and agent or to the principal only." Newcastle Manufacturing Company vs. the Red River Railroad Company, 1 Rob. 145; Thorn vs. Tait, ex., 8 An. 8. Was there a partnership, as contended by plaintiffs, between the several parties who bought the five hundred bales of cotton from Bruce, Simpson & Co.? The evidence, we think, does not sustain this pretension. Bower, in his testimony, is clear and distinct that it was not a joint adventure between the parties, that each party had the right to sell, dispose of, and control his own fourth of the cotton, or about 124 bales, as he pleased. Allison, in his testimony, says: "When I agreed to take a fourth interest in it, neither R. L. Adams nor W. A. Johnson was present. I was, however, informed at that time that they had taken an interest. I put up my own margin in a check for the amount. I did not understand that I was responsible for the margins which were to be put up by W. A. Johnson and R. L. Adams & Son. I did not understand myself to be in any event liable for more than one-fourth loss on that cotton. W. A. Johnson and R. L. Adams & Son and myself never met or had any consultation about it at or any time shortly afterward." To the same purport is the testimony of W. A. Johnson; and it was admitted that R. L. Adams, as a witness for the defendant, would testify to the same effect that Allison and Johnson did. We think it results from the entire evidence that there was not a partnership. Some of the essential elements of the contract of partnership were wanting. In going into the adventure it appears clearly that each party contracted for himself, and intended to be in no manner concerned with the contracts of the others, neither participating in nor intending to be bound by them. It is objected by defendants that Bower sold his interest to Lane. This did not place them in any more onerous condition. Either of the defendants might have sold his interest to a third party without affecting the rights of any of the other parties. They place it on the ground that the parties had the right to select their partner in the adventure. But as there was no partnership this objection has no weight.

The allegation of the defendants in their answer, that the cotton sold by Bruce, Simpson & Co. was in reality cotton purchased by Bower in New Orleans, and shipped by him, and that a part, if not the whole of it was afloat, and not received by Bruce, Simpson & Co. at the time they pretended to sell, is wholly unsustained by the evidence. The contrary is fully proved by abundant testimony. The defense, on the whole, is without force, except the denial of the plaintiff's right to recover from them eight per cent interest, as awarded him by the district court. In this respect the judgment must be amended.

It is therefore ordered that the judgment appealed from, so far as it condemned the defendants to pay eight per cent interest on the amounts decreed against them, be annulled and reversed, and in lieu of eight per cent it is now ordered that the judgment be amended by decreeing the defendants to pay on the several sums aforesaid five per cent interest, and, as thus amended, that the judgment of the district court be affirmed. The defendants pay costs in the lower court, the plaintiff and appellee those of this appeal. This decree disposes of the defendants' plea in reconvention.

Rehearing refused.