ROBBINS *v.* SEARS.[1]

*(Circuit Court, E. D. New York.* February 24, 1885.)

BROKER—AGENCY FOR BOTH PARTIES.

A broker who negotiates the hiring of a steam-boat cannot act as agent of both parties to the transaction, so as to be entitled to pay for his services from each, unless they understood his position and expressly agreed to such payments.

[1]Reported by R. D. & Wyllys Benedict, Esqs., of the New York bar.

Motion for New Trial.

*T. C. Cronin,* for plaintiff.

*Scudder & Carter,* for defendant.

WHEELER, J. This action is brought to recover commissions as broker on negotiating the hiring of a steam-boat by the defendant of one Wright. The case shows that the plaintiff received a commission from Wright for negotiating the letting of the steam-boat to the defendant. He could not act as the agent of both parties to the transaction so as to be entitled to pay for his services from each, unless they understood his position, and expressly agreed to such payments. *Dunlop* v. *Richards,* 2 E. D. Smith, 181; *Pugsley* v. *Murray,* 4 E. D. Smith, 245; *Rowe* v. *Stevens,* 53 N. Y. 621; *Carman* v. *Beach,* 63 N. Y. 97. Payment for procuring the letting to the defendant would include payment for procuring the hiring by the defendant, unless there was an express agreement to pay more. There was no evidence that the parties agreed to the payment of any more commission than Wright paid. There was evidence that defendant agreed to repay to Wright one-half of what he was to pay to the plaintiff, and that the plaintiff afterwards spoke to defendant about money for services, and that the defendant said it would be fixed when the charter-party was signed. This is all the evidence there was in respect to any agreement by defendant to pay commissions. It was argued that this did somewhat tend to show an express agreement to pay beyond what Wright paid, and the case was submitted to the jury in that view. But this remark, if made, is referable as well to what was coming from Wright as to any additional commission, and falls far short of being sufficient to uphold the verdict finding an express agreement of defendant to pay commissions in addition to what Wright paid.

The motion of defendant to set aside the verdict for plaintiff, and for a new trial, is granted.

---

It is a well-settled and salutary principle of law that no agent will ever be allowed to take upon himself incompatible duties and characters, or to act in a transaction where he has an adverse interest or employment.[1] And the rule is sometimes laid down, in general terms, that the same person cannot be the agent of both parties to a transaction.[2] In this case, it was correctly held that, in making a contract for the composition of a debt, the same man could not be the agent of both parties, but that, when the composition was agreed upon with the creditor by the agent of the debtor, he could become the agent of the creditor for another and distinct purpose, such as holding the money for the use of the creditor. So a person standing in the position of agent of both parties cannot execute a mortgage as the attorney of one for the benefit of the other.[3]

A contract, however, thus made by a person as the agent of both parties is not void, but only voidable at the election of the principal, if he comes into court on timely application.[4]

[1] Evans' Agency, *14; Dunne v. English, L. R. 18 Eq. 524.
[2] Hinckley v. Arey, 27 Me. 362.
[3] Greenwood v. Spring, 54 Barb. 375.
[4] Greenwood v. Spring, supra.

It is not necessary for a party seeking to avoid such a contract to show that any improper advantage has been gained over him. He has the option to repudiate or affirm the contract, irrespective of any proof of actual fraud.[1]

In *Sumner* v. *Charlotte, C. & A. R. Co.*[2] it was said that the law does not favor double agencies. Where, therefore, it appeared, in an action for damages against the railroad company, that the plaintiff had employed one C., who was a depot-agent of the defendant, to purchase cotton for him, and to hold and ship it under his directions, it was held that C., in so dealing in cotton for the plaintiff, acted solely as the plaintiff's agent, and there was no liability in the defendant for any loss resulting from the failure of C. to perform his duty as such agent.

In *Adams Mining Co.* v. *Senter*,[3] and in *Colwell* v. *Keystone Iron Co.*,[4] however, the rule is more accurately laid down that there is no principle of law which precludes a person from acting as agent for two principals. In the former case, CAMPBELL, J., referring to the claim that the double agency in the case (the same person being the agent of two neighboring mines) involved a conflict of duties, and that all of the agent's dealings, whereby the property of one company was transferred to or used for the other, should be held unlawful, said: "There is no validity in such a proposition. The authority of agents may, when no law is violated, be as large as their employers choose to make it. There are multitudes of cases where the same person acts under power from different principals in their mutual transactions. Every partnership involves such double relations. Every survey of boundaries by a surveyor, jointly agreed upon, would come within similar difficulties. *It is only where the agent has personal interests* [the italics are our own] *conflicting with those of his principal,* [*or where the interests of the two principals are adverse or incompatible,*] *that the law requires peculiar safeguards against his acts.* There can be no presumption that the agent of two parties will deal unfairly with either; and when they both deliberately put him in charge of their separate concerns, and there is any likelihood that he may have to deal with the rights of both in the same transaction, instead of lessening his powers, it may become necessary to enlarge them far enough to dispense with such formalities as one man would use with another, but which could not be possible for a single man to go through with alone."

In *Colwell* v. *Keystone Iron Co.*[5] it was accordingly held competent for a person in the general employ of the vendor to accept, by the consent of all parties, as agent of the vendee, the delivery of the property sold.

The fact that the purchaser of negotiable paper, resident in a distant part of the state, employs to collect the same a person who is also an agent for the payee, is not very significant of bad faith.[6]

While a person cannot properly be the agent of both parties, buyer and seller, yet if he accepts the position of agent for the buyer without disclosing the fact that he is agent for the seller, he cannot afterwards repudiate such position to shield himself from liability to the buyer, on the ground that he was agent for the seller. Having assumed the relation of agent for the buyer, he must be held to a strict performance of the duties, and to all the liabilities the relation imposes.[7] Where an agent is employed by several principals, the common employment creates a relation and privity between the principals, such as will sustain an action for money had and received by one against another to recover moneys belonging to the former paid over by the agent to the latter.[8]

A broker "is strictly a middle-man or intermediate negotiator between the

[1] Id.
[2] 78 N. C. 289.
[3] 26 Mich. 73.
[4] 36 Mich. 51.
[5] Supra.
[6] Helmer v. Krolick, 36 Mich. 371.
[7] Cottom v. Holliday, 59 Ill, 176. See, also, Bowen v. Johnson, 28 La. Ann. 9.
[8] Hathaway v. Town of Cincinnatus, 62 N. Y. 434.

parties; and for some purposes (as for the purpose of signing a contract within the statute of frauds) he is treated as the agent of both parties."[1] In a subsequent section the same author says: "But, primarily, he is deemed merely the agent of the party by whom he is originally employed ; and he becomes the agent of the other party only when the bargain or contract is definitely settled as to its terms between the principals.  *  *  *  It would be a fraud in a broker to act for both parties, concealing his agency for one from the other, in a case where he was intrusted by both with a discretion as to buying and selling, and of course where his judgment was relied on."[2] An agent cannot claim commission upon a transaction which has been entered into in violation of his duties to his principal.  The same person cannot act as agent for both seller and purchaser, unless both know of and assent to his undertaking such agency, and receiving commissions from both. Whether such double agency, even with the consent of both principals, is consistent with public policy, is not here decided.[3]  It is accordingly held that a broker employed to sell land (and the same rule would doubtless apply to sales of personalty) cannot recover compensation from both parties.[4]

The rule is the same where an exchange of property is effected by a broker as where a sale is made.[5]  Nor can an action for the recovery of commissions be maintained in such case against the owner of the property exchanged for, although by custom or usage among brokers in the place where the exchange was effected, they were entitled, in exchanges of real estate, to a commission from each party of $2\frac{1}{2}$ per cent. in the value of the property exchanged.[6]  Evidence in behalf of the broker to show a custom among brokers to charge a commission to both parties in such cases is inadmissible.[7]  If the broker in such a case exacts from a customer a promise of compensation additional to that promised by the person employing him to sell or exchange before sending the customer to the owner, he cannot recover any compensation from the owner for services, although a sale or exchange is effected with such customer.[8]  The fact that no loss is suffered from such action of the broker does not vary its effect, the transaction being against public policy.[9]  But where each owner, with knowledge that the broker has been employed by both, promises to pay him a commission, such promise may be enforced.[10]  And when a middle-man brings together a buyer and seller, each of whom has agreed, without the knowledge of the other, to pay the middle-man a commission on any contract which may be made between them, in the making of which the middle-man takes no part as the agent for either, the conduct of the middle-man in concealing from each his agreement with the other has been held not to be fraudulent, and hence no defense to an action brought by him against either for

[1] Story, Ag. § 28; Rucker v. Cammeyer, 1 Esp. 106; Hinde v. Whitehouse, 7 East, 558, 569; Kemble v. Atkins, 7 Taunt. 260; Henderson v. Barnewall, 1 Younge & J. 387; Beal v. McKiernan, 6 La. 407; Hinckley v. Arey, 27 Me. 362.

[2] See Wright v. Dannah, 2 Camp. 203; Farebrother v. Simmons, 5 Barn. & Ald. 333.

[3] Meyer v. Hanchett, 39 Wis. 419; S. C. 43 Wis. 246.

[4] Watkins v. Cousall, 1 E. D. Smith, 65; Vanderpoel v. Kearns, 2 E. D. Smith,.170; Everhart v. Searle, 71 Pa. St. 256; Bennett v. Kidder, 5 Daly, 512; Meyer v. Hanchett, 39 Wis. 419; S. C. 43 Wis. 246; Lloyd v. Colston, 5 Bush, 587; Finnerty v. Fritz, 5 Colo. 174, in which case the rule is laid

down that he is entitled to no commissions from either party.

[5] Scribner v. Collar, 40 Mich. 375; Pugsley v. Murray, 4 E. D. Smith, 245; Farnsworth v. Hemmer, 1 Allen, 494; Walker v. Osgood, 98 Mass. 348; Raisin v. Clark, 41 Md. 158; Meyer v. Hanchett, 43 Wis. 246; S. C. 39 Wis. 419; Lynch v. Fallon, 11 R. I. 311; Rice v. Wood, 113 Mass. 133. See, also, Carman v. Beach, 63 N. Y. 97.

[6] Raisin v. Clark, 41 Md. 158. See, also, Lynch v. Fallon, supra.

[7] Farnsworth v. Hemmer, 1 Allen, 494.

[8] Walker v. Osgood, 98 Mass. 348.

[9] Everhart v. Searle, 71 Pa. St. 256.

[10] Pugsley v. Murray, 4 E. D. Smith, 245; Rowe v. Stevens, 53 N. Y. 621; Alexander v. N. W. C. University, 57 Ind. 466. See, also, Meyer v. Hanchett, supra.

the commission agreed upon.[1] In an action against the seller, however, upon such a contract, evidence to prove a usage among brokers as to the time when a commission is to be considered earned, was held inadmissible.[2] An agreement by a person, desiring to purchase land, to convey a part of it to the seller's broker, cannot be enforced by the broker, if one of the considerations of the agreement was that he would put such person in communication with the seller.[3]

Tested by the rules above laid down, there can be no doubt of the correctness of the principal case.                                     M. D. EWELL.

*Chicago, June 3, 1885.*

---

[1] Rupp v. Sampson, 16 Gray, 398; Siegel v. Gould, 7 Lans. 177; Mullen v. Keetzlcb, 7 Bush, 253. See, also, Redfield v. Tegg, 38 N. Y. 212.

[2] Rupp v. Sampson, supra.

[3] Smith v. Townsend, 109 Mass. 500.