HUGGINS CRACKER AND CANDY COMPANY, Respondent, v. PEOPLE'S INSURANCE COMPANY, Appellant.

Kansas City Court of Appeals, May 19, 1890.

1. **Insurance : AGENCY.** A policy-writing agent of an insurance company cannot be the agent of the insurer and the assured where their interests stand opposed.

2. **Agency : ACTS OF DUAL AGENT VOIDABLE, NOT VOID.** A contract made by one individual as agent of both parties is not void, but only voidable at the election of the principal if he come into court on timely application, and delay will be considered a waiver.

3. ———— : ———— : PERSONAL PRIVILEGE. The privilege of avoiding the contracts of dual agents is personal to the parties sought to be bound, and such contracts cannot be attacked by strangers.

4. **Insurance : RESCISSION OF POLICY BY DUAL AGENT : OTHER INSURER.** Plaintiff ordered G. to secure it a given amount of insurance. G., who was the agent of K. Company, wrote a thousand dollars in that company and notified the company, who ordered the policy canceled. G. noted the concellation in his books, and on the evening of the same day, to replace the K. policy, took out from the defendant in favor of plaintiff the policy in suit, which he placed in his safe to be delivered to plaintiff. That night plaintiff's property burned. The next morning G. informed plaintiff of

what he had done in reference to the two policies and plaintiff then surrendered the K. policy and took defendant's policy instead. *Held*, the cancellation of the K. policy being ratified by the parties was not the subject of assault by defendant in this suit on its policy.

5. ———— : PAYMENT OF PREMIUM. Where the custom between plaintiff's and defendant's agents was to keep mutual accounts of premiums due on policies issued for each other and to pay the difference at the end of the month, the fact that no premium was paid at the time of taking out the policy in suit, nor had been paid at the time of the loss, will not defeat the policy ; the premium in effect being paid under the custom so far as the rights of the parties are concerned.

*Appeal from the Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*Lathrop, Smith & Morrow*, for appellant.

( 1 ) "The ratification must be entire or not at all. The principal is not permitted to ratify in part."- *Menkins v. Watson*, 27 Mo. 163 ; *Express Co. v. Palmer*, 48 Ga. 85 ; *Cochran v. Chitwood*, 59 Ill. 53 ; Meacham on Agency, secs. 174, 179, and authorities cited ; *Widner v. Lane*, 14 Mich. 124 ; *Krider v. College*, 31 Iowa, 547 ; *Billings v. Morrow*, 7 Cal. 171 ; *Coleman v. Stark*, 1 Oregon, 115 ; *Loan & Trust Co. v. Walworth*, 1 N. Y. ( Comst.) 433 ; *Bremer v. Sparrow*, 7 B & C. 310 ; *Fullman v. Stearns*, 30 Vt 443 ; *Ransom v. Wetmore*, 39 Barb. 104, also, an elaborate note citations; *Dodge v. Hopkins*, 14 Wis. 630 ; *Townsend v. Coming*, 25 Wend. 435; *Townsend v. Hubbard*, 3 Hill, 351 ; *Wallingford v. Ins. Co.*, 30 Mo. 46. ( 2 ) Instructions numbers 4, 5, 6, 8 and 10, asked by defendant, should have been given. They are the undoubted law. It is against the policy of the law and against good· morals to allow an agent to act for both parties, especially without the consent of both upon full information.

But the undisputed evidence is from Mr. McGibbons himself, that the Kenton Company did not know anything of the fact that he also claimed to be acting as agent of plaintiff. Yet in the same matter of the Kenton policy, and especially in regard to the cancellation thereof, McGibbons undertook to act as agent for plaintiff and the Kenton Company. If that were a void act, it could not be ratified. McGibbons it was who received the notice of cancellation from the Kenton Company, sent to him undoubtedly as its agent, and in total ignorance of any agency on his part for plaintiff; and the only cancellation attempted was not in accordance with the provisions of the policy, but simply by a pencil memorandum in his own office and not communicated to plaintiff—a mere annotation on the record that was the official register of his dealings with his own company. *Grace v. Ins. Co.*, 109 U. S. ( 278 ) 282 and 283 ; *White v. Ins. Co.*, 120 Mass. ( 330 ) 333 ; *Hodge v. Ins. Co.*, 33 Hun. ( 583 ) 587 ; *Von Wein v. Ins. Co.*, 52 N. Y. ( 490 ) 494. The Kenton Insurance Company could cancel its policy only by strict compliance with the conditions of the policy relating thereto. *Runkle v. Ins. Co.*, 6 Fed. Rep. ( 143 ) 148 ; *Stebbins v. Ins. Co.*, 60 N. H. 65 ; 3 Lansing ( N. Y.) 427 ; *Mills Co. v. Assurance Co.*, 125 Mass. 110 ; *De Steiger v. Hollington*, 17 Mo. App. 388 ; *Ritt v. Ins. Co.*, 41 Barb. 353 ; *Rothschild v. Ins. Co.*, 74 Mo. 44 ; *Ins. Co. v. Allen*, 80 Ala. 571 ; *Ins. Co. v. Allen*, 80 Ala. 576 ; *Grace v. Ins. Co.*, 109 U. S. 281 ; *Von Wein v. Ins. Co.*, 52 N. Y. 494 ; *Herman v. Ins. Co.*, 100 N. Y. 411 ; s. c., 53 Am. Rep. 197 ; *Griffey v. Ins. Co.*, 100 N. Y. 417 ; *Ins. Co. v. Turnbull*, 5 S. W. Rep. ( Ky.) 542 ; *Body v. Ins. Co.*, 63 Wis. 157 ; *Broadwater v. Ins. Co.*, 34 Minn. 465 ; 26 N. W. Rep. 455 ; *Kohler v. New Orleans*, 23 Fed. Rep. 709 ; *Hermann v. Ins. Co.*, 1 Cent. Rep. 707 ; *Ins. Co. v. Fussell*, 3 N. E. Rep. 67 ; *Griffey v. Ins. Co.*, 1 Cent. Rep. 628. ( 3 ) There was no cancellation before the

fire, except the mere annotation on McGibbons' book. But that is insufficient of itself because if it were otherwise, then McGibbons would be allowed without the knowledge and consent of both parties to act as agent for both in a matter where the interests were antagonistic. The results of such agency are void, and not capable of being ratified because agreements void in their inception, on grounds of public policy, cannot be rendered good and valid by ratification. Nor can any number of subsequent promises give validity to a contract originally void by policy of the law. *Poor v. Ins. Co.*, 2 Fed. Rep. 432 ; Greenwood on Public Policy, 8, and cases cited ; Greenwood on Public Policy, p. 302 ; *Ritt v. Ins. Co.*, 41 Barb. (N. Y.) 353 ; *Ins. Co. v. Ins. Co.*, 17 Barb. 32 ; *Ins. Co. v. Ins. Co.*, 20 Barb. 468. (4) When McGibbons had procured and placed the five thousand dollars' insurance, that was an end of his authority—and, without further power, had no right to procure the policy sued upon, or to undertake to cancel, or consent to have canceled, the Kenton policy. *Wilson v. Ins. Co.*, 140 Mass. (210) 212 ; *Hodge v. Ins. Co.*, 33 Hun. (N. Y.) (583) 588 ; *Stebbins v. Ins. Co.*, 60 N. H. (65) 70 ; *Body v. Ins. Co.*, 63 Wis. (154) 161 ; *Mills Co. v. W. A. Co.*, 125 Mass. 110.

*Allen H. Vories*, for respondent.

(1) The acts of McGibbons, as agent of the plaintiff and the Kenton Insurance Company, were not void, but only voidable at the election of one of the parties. The defendant in this action cannot avail itself of any such defense,—such contracts are voidable by the parties alone, provided they apply to the proper court in a reasonable time to have them set aside—otherwise, they are presumed to assent to them—and are as much bound by them thereafter as though they were not

affected by original infirmity, and all objections will be deemed waived. *Greenwood v. Spring*, 54 Barb. 376; *Ins. Co. v. Ins. Co.,* 20 Barb. 469–471, and cases cited; *Waddell v. Williams*, 50 Mo. 218–222; *Grayson v. Weddle*, 63 Mo. 523–539; *Ward v. Brown*, 87 Mo. 87; *Parsoll v. Chapin*, 8 Wright (Pa.) 9–13, 14–15; *Ins. Co. v. Ins. Co.*, 17 Barb. 133–7; *Fitzsimmons v. Ex. Co.*, 40 Ga. 330; 2 Am. Rep. 577; *De Steiger v. Hollington*, 17 Mo. App. 389, and cases cited; *Shelton v. Homer*, 5 Metcalf (Mass.) 467; *McCarty v. Dolfsen*, 5 Johns. 43–48; *Harrington v. Brown*, 5 Pick. 521; *Gallatin v. Cunningham*, 8 Cowen, 376–7; *Colden v. Walsh*, 14 Johns. 414–15; *Williams' Ex'r v. Marshall*, 4 Gill (Johns.) 376; *Connelly v. Hammond*, 51 Tex. 635; *Small v. Railroad*, 55 Iowa, 582; *Miller v. Land Co.*, 56 Iowa, 374; *Copeland v. Ins. Co.*, 6 Pick. 197–204; *Ins. Co. v. Ins. Co.*, 55 N. Y. 350; *Martin v. Judd*, 60 Ill. 78; *Kearney v. Vaughan*, 50 Mo. 284–7–8. Notice to the agent of defendant, when he issued the policy in suit, that McGibbons was acting as the agent of plaintiff and the Kenton Insurance Company, was notice to defendant, and the evidence fully discloses that fact. *Ins. Co. v. Ins. Co.*, 42 Mo. 456; *Combs v. Ins. Co.*, 43 Mo. 149; *Hayward v. Ins. Co.*, 52 Mo. 181; *Hereford v. Bank*, 53 Mo. 330; *Pelkington v. Ins. Co.*, 55 Mo. 173–9; *Breckinridge v. Ins. Co.*, 87 Mo. 62–71.

*Lathrop, Smith & Morrow*, for appellant on rehearing.

(1) The issue, then, of double agency is raised in the reply. Plaintiff's counsel seek to get rid of the Kenton policy by the exercise of an agency, which the law forbids, and which the law declares absolutely void, because against public policy. Take the double agency out of the case and the Kenton policy remains intact. *Fuller v. Dana*, 18 Pick. 472; *Spinks v. Davis*, 32

Miss. 152; Greenwood on Public Policy, p. 1; *Van Valkenburgh v. Ins. Co.*, 51 N. Y. 465; *Cooper v. Ord*, 60 Mo. 420; *Cunningham v. Snow*, 82 Mo. 587; *Lee v. Porter*, 18 Mo. App. 377. Again, the cancellation claimed to have been made by McGibbons, not being enforceable at law, but being void as against public policy, could not be ratified. No number of subsequent promises can infuse vitality into a contract originally void by the policy of the law. Greenwood on Public Policy, p. 8; *Ass'n v. Berghaus*, 13 La. Ann. (209) 210; *Negley v. Lindsay*, 67 Pa. St. (217) 227; *Shelton v. Marshall*, 16 Tex. 344; *Chamberlain v. McClurg*, 8 W. & S. Pa. 31; Greenwood on Public Policy, pp. 1-2; *Egerton v. Brownlow*, 4 H. of L. Cases, 1; Greenwood on Public Policy, p. 2, and cases cited; *Crawford v. Wick*, 18 Ohio St. 190, 204; *Stanton v. Allen*, 5 Denio, 434. And by void is meant that courts will refuse to enforce it. Then, with reference to the ratification of such contract, we refer to rule 9, which provides that no agreement, void in its inception by rule 2, can be given operative force by the ratification of the parties, even after the accomplishment of the object. Greenwood on Public Policy, p. 8, rule 4; *Shenk v. Phelps*, 6 Brad. Ill. (612) 619; *Coppell v. Hall*, 7 Wall. 538; *Thompson v. Warren*, 8 B. Mon. (Ky.) 491.

SMITH, P. J.—This suit was brought by the plaintiff against the defendant, an insurance company, to recover an amount of nine hundred and seventy-five dollars on its policy of date of November 1, 1887, covering the period of one year, on account of loss by fire consuming the stock in trade of plaintiff on the night of November 4, 1887. Said policy covers the stock destroyed. The only defense made by the answer of defendant is, that S. S. McGibbons was the agent of the Kenton Insurance Company, and, as such, issued on the twenty-sixth of October, 1887, its policy in favor

of plaintiff for one thousand dollars on the same stock of goods covered by defendant's policy, and delivered it to plaintiff, covering a period beyond the fire which destroyed plaintiff's property ; that McGibbons, at the same time, took out other policies in favor of plaintiff, to place for it an additional five thousand dollars' worth of insurance, and that the risk covered and designed to be carried by the defendant company, and the policy of the defendant was intended as a substitute for the Kenton policy ; that, after the delivery of the Kenton policy, but before said fire, the Kenton Company, not wishing to carry said risk, advised and directed its agent McGibbons to have the same canceled ; that said Kenton policy contained the *clause*, "This policy may, at any time, at the option of the company, be canceled by giving notice in writing to the assured, or his legal representative, the company shall thereafter return a ratable proportion of the premium, etc.; and that no agent shall waive," etc.; that, at the time of said direction to cancel, the Kenton policy was, and continued to be until after said fire, in possession of plaintiff ; that plaintiff had no notice of such cancellation from the Kenton Company, nor did McGibbons notify it thereof, and that no written notice was, before said fire, given by said Kenton Company to plaintiff, or its legal representative ; that said McGibbons, after receipt of such notice to cancel, whilst still acting as the agent of the Kenton Company, solicited M. W. Bennett, the agent of the defendant, to issue the policy sued upon, for the express purpose of substituting the same in place of the Kenton policy, to cover and embrace the same property and risk, and for like amount as that covered by the Kenton policy, and that, for such purpose, defendant's agent issued and gave to McGibbons the policy in suit. All of which was done by said McGibbons without the knowledge or consent of plaintiff. Defendant further charged such substitution was

not made prior to the fire, and that such substitution was never made ; that nothing was ever paid to or received by defendant company or its agents by way of premium for said policy ; that said policy never took effect, and was never delivered to plaintiff until after the fire ; that McGibbons did not undertake or make such substitution or cancellation until after said fire, at which time the loss complained of had occurred, and the property ceased to exist.

Plaintiff, for reply to defendant's answer, charged that for three years prior to the issuing of the Kenton policy, Samuel S. McGibbons had been, and was, the sole and trusted agent of plaintiff in placing and controlling all its insurance, to cancel, replace and substitute policies at his pleasure and discretion without consulting plaintiff, and said plaintiff, at all times, ratifying and confirming whatsoever he did ; that, after the issuing of the Kenton policy and before said fire, said company notified said McGibbons that it would not carry said risk, and to cancel said policy ; that no premium had yet been paid to said Kenton Company for its policy ; that, on the third day of November, 1887, before said fire, McGibbons, as the agent of plaintiff, and in pursuance of the power and authority in him vested, in good faith and in due course of business, procured from defendant's agents, in Kansas City, Missouri, the policy of defendant company in suit, covering the same risk and amount of the Kenton policy, dated November 1, 1887, for one year, and, thereupon, received said policy, as the agent of plaintiff, in lieu of and as a substitute for said Kenton policy, and deposited the same in his safe until such time as he could deliver it to plaintiff and marked in his books under the entry of Kenton policy, "Refused to carry, and canceled ;" that defendant's policy was not delivered to plaintiff until the day after the fire, when McGibbons reported that the Kenton Company had

refused to carry said risks; that he had canceled its policy, and taken that of the defendant company as a substitute therefor. All of which acts of McGibbons the plaintiff then and there approved, and delivered up said Kenton policy to said McGibbons to be delivered up to said Kenton Company. There were other matters set up in the replication which are not necessary to be stated here.

The evidence tends to show that S. S. McGibbons, who procured the policy of insurance in suit from the defendant company, had, for four or five years prior to the issue of such policy, been the general agent of plaintiff—having in charge all its insurance—placing it in such companies and amounts as he might select, and at his discretion changing policies from one company to another; canceling and substituting policies for those canceled, at his pleasure, without consulting plaintiff in reference thereto; the only restriction upon him being in reference to aggregate amounts of insurance, which plaintiff controlled, but with full power and authority to such agent to keep plaintiff's insurance full up to amount directed. Said agent paid premiums for plaintiff, received return premiums on canceled policies, giving plaintiff credit for them, keeping account of all moneys received and paid out, and from time to time making reports to plaintiff, and collecting money from it on insurance account, and during all of said time plaintiff had approved his every act. Plaintiff never knew, when it gave an order for insurance to said agent, what companies it was insured in, nor what amount each company carried until the agent reported his action to plaintiff; plaintiff leaving the whole matter of insurance to McGibbons, and whatever was done in that line was done by him. In all the time mentioned, there were but one or two departures from this mode, and that was under special circumstances when plaintiff directed that certain insurance be given to a certain

agent, of which McGibbons was informed and gave his consent. That he kept an account of all the policies of insurance in favor of plaintiff, and the time when they would expire, renewed these policies and changed insurance from one company to another, at his discretion, without ever consulting plaintiff, frequently getting from plaintiff all its policies, and examining them to see whether they were concurrent or safe, and made whatever alteration he deemed proper in description of property insured, or changed policies from one company to another, and when one policy expired or was canceled, in order to keep plaintiff's insurance full, took out others in their stead, and, when he got through with his examination, would return the policies to plaintiff. That he had explicit instructions from plaintiff to keep its "insurance full." That plaintiff had nothing to do with its insurance further than to inform McGibbons of the amount of insurance it wanted kept up on its stock, and to pay him from time to time his bills for premiums when reported. That McGibbons received an order from plaintiff, about October 26, 1887, to place five thousand dollars' additional insurance for it. That he did so, placing one thousand dollars of the amount in the Kenton Insurance Company, which he represented, and delivered the policies to plaintiff. A few days after this he received written notice from the Kenton Company, that it would not carry the risk, and to cancel the policy. His clerk, on the forenoon of November 4, 1887, from the letter received, wrote on his policy register book, under the entry of the Kenton policy: *"Risk refused—canceled."* In the afternoon of that day, he procured from Bennett, the policy-writing agent of defendant, the policy sued on, dated back to November 1, 1887. He intended this policy to take the place of the Kenton policy, which had been canceled. That this latter policy was taken on the authority and instructions of plaintiff, in order to keep the insurance of

plaintiff full up to the amount required of five thousand dollars. That Bennett delivered the policy so issued to him for the plaintiff; nothing being said as to any payment of premium—there being mutual accounts of insurance between them, which they settled up monthly. That he then substituted this policy for the Kenton, which had been canceled. That he put this one in his safe, and that night the fire occurred. That as soon as he saw Mr. Vories, who was the secretary and treasurer of plaintiff, and who had charge of the insurance of said company, he told him what had been done, who said: "All right;" that he delivered the policy sued on to Mr. Vories, who surrendered to him, unconditionally, the Kenton policy and he returned it to the home company. That he afterwards tendered to the agent of defendant in Kansas City, Missouri, Mr. Bennett, in a short time after the fire, the premium of twenty-two dollars, who declined to receive it; saying his company had instructed him not to take the premium. This money was tendered in court, and under stipulation was not deposited. Plaintiff in two days after the fire gave notice of loss to defendant, and in due time made proof of loss, which was duly received by defendant at its home office in Pittsburg, Pennsylvania. One L. S. Baker appeared as adjuster for defendant and made out the proof of loss for defendant company, sent it to defendant, and this was returned by defendant to plaintiff with a note declining to pay the loss, nine hundred and seventy-five dollars, on the sole ground that it did not think it was liable under its policy. Plaintiff recovered judgment, from which defendant appealed to this court.

I. Numerous points have been suggested and pressed upon our consideration in this case. Indeed the ingenuity which counsel have displayed in evolving theoretical deductions from the record is only exceeded by their research in collating and citing authority in

support thereof. But after all it seems to us that the underlying and decisive question is one of agency. Whether a policy-writing agent of an insurance company may be the agent of the insurer and the assured where their interests stand opposed, is the question which we have to decide. The law which commands what is right and prohibits what is wrong, we think, does not tolerate an agency of this kind. It has laid the rigorous hand of its iron interdict upon such an agency. For one successfully to ride two horses at the same time, going in opposite directions, is a feat in equestrianism remaining yet to be performed. The authoritative declaration that no man can serve two masters has reached us sanctioned by the experience of ages. Said Chief Justice STONE in *Ins. Co. v. Allen*, 80 Ala. 571 : " Such shifting use of a paid employe finds no sanction in that sturdy morality which should underlie every system of jurisprudence." In *DeSteiger v. Hollington*, 17 Mo. App. 388, it was said : " We then have Beery acting as agent for both parties, his conduct in this particular giving evidence of the deep wisdom of the law in declaring such an act fraudulent and of no effect. Agency or employment for two parties in antagonistic interests is not a worthy position to occupy. It is not possible for a man to serve two masters, with opposing interests, honestly, at the same time. The right of one or the other, or both, will necessarily suffer. The temptation for wrong is too great for ordinary human nature. So jealous is the law as to the relation between principal and agent that, in passing on questions of this character arising between them, the mere fact of the discovery of no actual fraud or bad faith does not relieve the case in the least. The cases are nearly if not quite uniform, where the double employment exists and is not known. No recovery can be had against the party kept in ignorance, and the result is not made to turn on the presence or absence of

designed duplicity and fraud, but is a consequence of established policy." In *Mercantile Ins. Co. v. Hope,* 8 Mo. App. 408, it was said that, "The antagonism which exists between the opposite parties to a bargain is generally recognized by law. Each acts and has a right to act with a view to his own interest and they deal at arm's length. Accordingly if one acts by an agent that agent should be not nominally but really in place of the principal with his self interest undisturbed by calculations as to the interest of the opposing party. This, as well as the exercise of the best skill and judgment of his agent as to the contingencies of the bargain, the principal has the right to demand. Accordingly a contrivance which reduces the two parties to one and admits an agent representing antagonistic interests to make a bargain by himself is so far against the policy of the law that the contract is held void." And this statement of the law was approved by us in *Reese v. Garth,* 36 Mo. App. 641. In *Atlee v. Fink,* 75 Mo. 100, it was declared that "one employed by another to transact business for him has no right to enter into a contract with a third person which would place it in his power to wrong his principal in the transaction of the business of the latter, and which would tempt a bad man to act in bad faith towards his employer." In the case of *Ins. Co. v. Ins. Co.,* 17 Barb. ——, it was remarked *inter alia;* "The general principle that a party cannot act for himself in the same *transaction* in which he *undertakes* to act for another is well settled, and the validity of a contract in which he acts and to which he is a party as agent for a third person and also in his own behalf does not depend upon the question whether he makes an advantage by the transaction but the policy of the law, and without inquiring whether it is beneficial to the principal or into the actual good faith of the agent *declares the act void.*" In *Fuller v. Dana,* 18 Pick. 472, the court said "the law avoids contracts and

promises made with a view to place one under wrong influences ; those which offer him temptation to do that which may affect injuriously the rights and interests of third persons. In *Spinks v. Davis*, 32 Miss. 152, it is said : "It is a sufficient objection to a contract on the ground of public policy that has a direct tendency to induce fraud and malpractice upon the rights of others." And to the same effect are numerous other authorities which it is unnecessary to cite here.

Now it may be conceded that McGibbons in the matter of issue of the policy to plaintiff in the Kenton Company and the subsequent cancellation thereof acted as the agent of the insurer and the insured. An agency of this kind is, as we have seen, under legal condemna·tion. But were the acts of such double agent void, or only voidable ? In *Greenwood v. Spring*, 54 Barb. 375, it was said that, "A contract made by one individual as agent of both parties *is not void, but only voidable* at the election of the principal if he come into court on timely application. *The rule seems to be founded on the danger of imposition;* and such agreements are regarded as constructively fraudulent. It is not necessary for a party seeking to avoid such a contract to show that any improper advantage has been gained over him ; it is at his option to repudiate or affirm the contract, irrespective of any proof of actual fraud. But unless application be made within a reasonable time to set it aside a valid title will pass, if it be upheld by a sufficient consideration and proper forms have been observed. If application to set it aside be not made within a reasonable time, the delay will be considered a waiver." This doctrine is fully supported in other well-considered cases. *N. Y. C. Ins. Co. v. N. P. Ins. Co.*, 20 Barb. 469 ; *Parsoll v. Chapin*, 8 Wright (Pa.) 9 ; *Waddell v. Williams*, 50 Mo. 218 ; *Allen v. Ransom*, 44 Mo. 263 ; *Grayson v. Weddle*, 63 Mo. 523 ; *Thornton v. Quinn*, 43 Mo. 153 ; *Wand v. Brown*, 87 Mo. 468 ; *Red-*

*dic v. Garneau,* 49 Mo. 389. The acts of such double agents are not *ipso jure* or *per se* void. *Jackson v. Walsh,* 14 John. 406.

If the agreements of McGibbons in his character of dual agent were only voidable the question is, who could take advantage thereof? This is a privilege which is solely personal to the principal. As a defense it has been likened to that of usury and the statute of limitations which is not available to either trustees, assignees or creditors. *Kearney v. Vaughan,* 50 Mo. 284; *Greenwood v. Spring, supra; McCarty v. Van Dolfson,* 5 John. 4, 3; *Harrington v. Brown,* 5 Peck. 519; *Connelly v. Hammond,* 50 Tex. 635; *Gallatin v. Cunningham,* 8 Cow. 376; *Martin v. Judd,* 60 Ill. 78; *Shelton v. Homer,* 5 Metc. 467; *Copelan v. Ins. Co.,* 6 Peck. 197. The cases in this state cited in the preceding paragraph also fully sustain this view. The term "void" is often used loosely and indefinitely both in statutes and by courts and does not usually mean that the act or proceeding is an absolute nullity. "Many things are called void which are not absolutely so, and as to mankind generally are treated as valid. They can only be called relatively void. Conveyances, assignments, etc., in fraud of creditors are declared by statute to be void as to such creditors, yet they become perfectly good unless attacked by such creditors." A thing is void which is done against law at the very time of doing it and where no person is bound by the act; but a thing is voidable which is done by a person who ought not to have done it but nevertheless cannot avoid it himself after it is done." *Kearney v. Vaughan,* 50 Mo. 284. So that in cases within and without this state where this term is used in relation to the acts of dual agents it is not to be understood as implying that his acts are absolute nullities. It is used interchangeably with the term "voidable." It must needs follow from what has been stated that the acts of McGibbons in and

about the cancellation of the Kenton policy were at most but voidable, and subject, under the rule which has already been quoted, to be repudiated by the parties whom it was sought to bind, but that it was not the subject of attack by strangers. If the rescission of the policy in the Kenton Company was voidable on account of the double agency of McGibbons, yet as the parties thereto ratified the same it stands as if it had been accomplished by the parties themselves instead of through the double agency of McGibbons. The policy of the plaintiff in the Kenton Company was, then, as to this defendant, properly canceled. The mode or manner of the cancellation of the Kenton policy was a matter that concerned only the parties to it and it was not subject of assault by the defendant in this suit.

When the policy sued on was issued by the defendant to the plaintiff, the policy which had been issued to it for a like amount in the Kenton Company was not then in force having previously been canceled. The plaintiff had then no policy in force in the Kenton Company. The defendant issued its policy to the plaintiff to take the place of the Kenton policy. The procurement of this policy by the plaintiff's agent, McGibbons, completed the execution of the plaintiff's order for five thousand dollars' additional insurance.

All the previous and contemporaneous conversations and negotiations between McGibbons, the agent of plaintiff, and the agent of defendant, in respect to the issue of the policy in the defendant company were merged in that policy. It was delivered to plaintiff's agent before the fire, and whether the premium was actually paid or not was not essential to the validity of the policy. *Keim v. Ins. Co.*, 42 Mo. 38; *Baldwin v. Ins. Co.*, 56 Mo. 151; *Kohn v. Ins. Co.*, 1 Wash. C. C. 93; *C. M. M. Ins. Co. v. Ins. Co.*, 19 How. 318.

And especially is this so under the custom existing between McGibbons and Bennett, the defendant's agent,

of keeping mutual accounts for premiums due on policies issued for each other and paying the difference at the end of each month. Under this existing custom the premium was paid, or it was paid in effect so far as the rights of the parties to this controversy are to be affected by it. We are compelled to think that at the time of the fire all the conditions existed which were requisite to the validity and efficacy of the policy in the defendant company.

We cannot discover in the view which we have taken of the case that the question of ratification arises at all. The procurement of the policy in the defendant's company was within the previous authority conferred upon McGibbons by plaintiff as its agent. Being unable to discover any errors in the record before us which materially affect the merits, it results that the judgment must be affirmed. All concur.