E. N. FITZSIMMONS, plaintiff in error, *vs.* THE SOUTHERN EXPRESS COMPANY, defendant in error.

When A., at the approach of the Federal army to Columbia, South Carolina, in January, 1865, meeting the Charlotte, North Carolina, agent of the Southern Express Company, requested him to take special charge of a box of silver which A. wished sent to Charlotte, and the box was shipped and receipted for by the agent at Columbia, directed by the owner to Mrs. Fitzsimmons, care of L. F. Bates, agent of the Southern Express Company, Charlotte, North Carolina, and the box was delivered to said agent by the Express Company, but was afterwards lost: *Held*, that under this evidence it was not error for the Court to charge the jury that if they believed the plaintiff had made Bates his own agent, and that the box had been delivered to Bates, the Company was discharged.

Common-Carriers. Agency. Before Judge GIBSON. Richmond Superior Court. January Term, 1869.

Eleanor N. Fitzsimmons, as trustee for the children of J. Mott Alston, brought case against the Southern Express Company as a common-carrier, and as warehousemen, for the loss of a box of family silver plate, etc., with counts to meet the different phases of the case apparent from the evidence.

There was no question as to title or value. Alston's wife, to whom the lost box belonged, and Alston, transferred their rights therein to Mrs. Fitzsimmons for said children. ALSTON testified, that on the 11th of February, 1865, at Columbia, South Carolina, he shipped by said Express Company two boxes marked, respectively, " Mrs. E. N. Fitzsimmons, care L. F. Bates, Superintendent Southern Express Company, Charlotte, North Carolina," and " J. Mott Alston, care of L. F. Bates, Superintendent Southern Express Company, Charlotte, North Carolina;" that they were so marked by

direction of said Bates, and at the time of the delivery he instructed Bates to keep the boxes safely in Charlotte until called for by Alston, and on no account to allow them separated; that Bates agreed to do so; the box marked Fitzsimmons was delivered, the other was not; that he delivered the boxes to the company as a common-carrier, paid $39 25 for freight, and took receipts for them; that he never authorized any one to ship either of the boxes away from Charlotte, except that he sent there for them by an agent, who received the Fitzsimmons box, but was told that the other was sent to Richmond when Charlotte was threatened by the Federal forces.  He produced and read in evidence the company's receipt, signed by one McCome, as agent, dated 11th February, 1865, in usual form, (see 38th Georgia Reports, 519,) in which the value of the goods is stated at $10,000 00.  It seems to have been conceded that this valuation, and the freight paid, were in Confederate currency, but the value of that currency at that time does not appear by the record.  In fact, at that time it took fifty such dollars to buy one dollar in gold.

A witness testified that he called at Charlotte for the boxes under a written request from Alston, in these words:  "See Mr. Bates, Southern Express agent at Charlotte, North Carolina, about two boxes, marked J. M. Alston and Mrs. E. N. Fitzsimmons, and ask Mr. Bates to keep them for me till I can send for them. J. M. ALSTON."  And that Bates replied in writing:  "Box marked J. M. Alston was forwarded, by order, to Richmond, with General Preston's boxes, as they, the Preston boxes, are now in charge of Major C. D. Milton, at Chester.  I presume your box is also."

Another witness testified, that in the fall of 1865, he called, at Alston's instance, on Bates, at Charlotte, North Carolina, for said boxes, got the Fitzsimmons box, and was told that the other had been forwarded to Richmond, as aforesaid.

General PRESTON testified, that he never ordered Alston's box shipped, and that it did not come with his, so far as he knew, he having never seen it.

A letter from R. B. BULLOCK, Superintendent of said

Company, was read in evidence, in which he said : "A box marked Colonel Alston, is supposed to have been shipped with a lot of other boxes of silver of Colonel Preston, to Richmond, and thence back to Charlotte," etc. And here plaintiff rested her case.

For the defendant, said BATES testified, that he was the agent of defendant at Charlotte, North Carolina, in the winter of 1865; that a few days before the Federal army occupied Columbia, a gentleman called on him and inquired as to removing valuables from Columbia, South Carolina, to Charlotte, North Carolina, and said he had a box containing silver, of which he desired Bates to take care for him; that he Bates, replied, that he would do the best he could for its safety, and would use the same means as though it were his own; that soon after, two boxes came, accompanied by said gentleman, marked as aforesaid; that the boxes arrived in Charlotte in good order, and he, knowing that the Alston box contained silver, put it, in Charlotte, with the silver of Generals Preston and Hampton, but not knowing the contents of the box marked Fitzsimmons, he let it stay with the other freight; that Charlotte was threatened by the Federal army, everybody was trying to remove valuables, and General Preston sent an order for his boxes to be sent to Richmond; Bates telegraphed back to Preston, or his agent, "what about the Alston box?" and received a reply, "send on Alston box with General Preston's;" and in obedience to these orders he sent Preston's and this Alston box to Richmond, on the 20th of February, 1865, and that it reached Richmond; he supposes, now, that Alston's box was burnt when Richmond was evacuated, the office of defendant, at Richmond, having been then destroyed by fire, though he never knew of the loss till Alston's agent called for the box. Bates further testified, that he was representing Alston, as his agent, in preserving the box, and believed that Alston so recognized him; that he would not have received it for the pittance in Confederate money paid for the freight, had really a full load, but supposed he was doing a personal favor to Alston, and took it for that reason only.

Fitzsimmons *vs.* The Southern Express Company.

The Court was requested by the plaintiff's attorneys to charge the jury:

1st. Where goods arrive at the point of destination, and are delivered to the company's warehouseman, the common-carrier becomes, as to such goods, warehouseman by operation of law, and as such warehouseman, is bound to exercise ordinary care for such goods. If, under such circumstances, the goods be misdelivered, or shipped to another point, without authority, it is a misfeasance, and makes the common-carrier liable for their loss, whether the misdelivery or sending them away was by the carrier as carrier or as warehouseman. The Court gave in charge the request, with this addition, " provided such misdelivery or sending away of the goods was not by mistake, or done purposely for the safety of the goods, and for the benefit of the owner."

2d. The same individual cannot be the agent of two parties in the same transaction whose interests are conflicting; if Bates was superintendent of defendant, at Charlotte, North Carolina, he could not have been the agent of Alston, and a shipment from Charlotte, by Bates, was unauthorized, and did not relieve the defendant from liability. He charged that while that was true, generally, yet if Alston shipped the goods to the care of Bates, he made Bates his agent, and a delivery to Bates discharged the defendant: thus, if goods are shipped to the care of the Superintendent of the Georgia Railroad Company, it makes such superintendent the agent of the shipper, and a delivery to him relieves the company from all liability.

3d. The shipment of the goods from Charlotte to Richmond, without authority was a new undertaking, at the risk of defendant, and defendant cannot shield itself under the terms of its receipt as to the value of the goods, but is bound for the full value thereof. He refused so to charge, but charged that the contract as to value continued and followed the goods, that defendant could not be held responsible for more than the value put upon the goods by the shipper, and that, in ascertaining that value, the jury is not confined to the specie value of the Confederate currency specified in the

receipt, if the contents were stated at the time, or known to the defendant; if the goods were carried to Charlotte, the contract of shipment was executed, but if afterwards the goods were lost by the misfeasance of defendant, it is bound for the full value of the goods, notwithstanding the value specified in the receipt.

Further he charged, as follows: "The Express Company is a common-carrier, and bound to carry safely, and within a reasonable time, all goods entrusted to it to the point of destination, and then to deliver them to the consignee. The defendant can excuse itself from the performance of such duty only by showing that it was prevented by the act of God or the public enemy: and, within the reason and spirit of the latter exception, if prevented by the forces of either the Federal or Confederate army, it is excused from its extraordinary liability. If the goods were consigned to, and delivered to Bates at Charlotte, North Carolina, you can not hold the defendants liable unless Bates, the consignee, again shipped the goods by express, and they were lost *in transitu*, or in the care of defendant as a common-carrier or bailee.

"If, at the destination, in Richmond or Charlotte, the goods were lost, after a reasonable time, the defendant is only liable for ordinary care and diligence, such as a prudent man takes in the management of his own affairs, and if, without defendant's fault, the goods were lost or destroyed, the defendant is not liable.

"If defendant is liable, and at the time of consigning the goods plaintiff fixed, by special contract, a value to them, she cannot, whether they were lost in defendant's possession, as common-carrier or warehouseman, recover more than the value affixed in said special agreement. The extraordinary liability of common-carriers, in making them insurers of goods, is like all other insurance, if the value of the property is specified in the policy, no more than the specified value can be recovered.

*"If defendant transported the goods beyond their destination, or delivered them to the wrong person by mistake, defendant is guilty of a misfeasance, and is liable for the

goods, yet, if they were transported beyond their destination, or delivered to a wrong person, that is, to another than the consignee, for the good of the consignee or consignor, and to protect his or their property, the *bona fides* of this action, as well as its prudential character, are proper subjects for your consideration, and may or may not amount to a misfeasance in law.* If you find the defendant liable you are not compelled to abide by the gold value of the Confederate money expressed in the receipt, but its purchasing value, or any other circumstances, may be considered, especially if the contents were stated, provided this is necessary to do full justice and equity between the parties."

The verdict was for the defendant. Plaintiff's attorneys moved for a new trial, upon the grounds that the verdict is contrary to the evidence, and the principles of justice and equity, because the Court erred in modifying said requests to charge as he did, and in refusing to charge as requested, because that part of the charge between ** is hypothetical, and because the verdict is strongly and decidedly against the weight of the evidence and against the charge of the Court.

The new trial was refused. This is assigned as error on said grounds.

JOHNSON & MONTGOMERY, W. HOPE HULL, for plaintiff in error, said consignment to agent is consignment to principal: Story on Agency, sec. 274 and note; and delivery to agent, who is consignee, does not terminate carrier's liability: 2 Redf. on R. W., 65; Russell vs. Swinton, 16 N. Y. Ct. Appl., 515.

WILLIAM T. GOULD, J. P. CARR, for defendant, said one may be simultaneously agent of two whose interests conflict, but his acts are voidable at option of either principal: Story on Agency, sec. 211, and cases cited, N. Y. C. Ins. Co. vs. Nat. Pro. Ins. Co.; 20 Barb. N. Y., 470; Browne on St. of F., sec. 369. There is a distinction between negligence and misfeasance: Ang. on Car., secs. 12, 269; Ellis vs. Turner, 8 T. R., 531; every deviation is not misfeasance: Abbott on Shipping, 361, 477, 481; Ang. on Car., 163, 201, 215, 219;

and cases cited : Chitty on Car., 38.   As to valuation, they said owner was bound by representations at shipment : Ang. on Car., 258–9, 481, 484; Story on B., 565; O. City B'k vs. Brown, 9 Wend. R., 116; Hollister vs. Nolen, 19th Wend. R., 234; Cole vs. Goodwin, Ib., 251 ; Watkinson vs. Laughton, 8 John. R., 213; Amory vs. McGregor, 15th John R., 24.   Delivery to Bates relieved defendant : Labar vs. Taber, 35 Barb., 305; Ang. on Car., 291, 502; Rome R. R. vs Sullivan, Cabot & Co., 14th Ga. R., 279.   Diligence is for the jury : Ang. on Car., 7, 11, *et passim.*

McCay, J.

We have no doubt that the verdict of the jury is supported by the evidence.   The plaintiff in error, has no right to a new trial, unless there be such error in the charge of the Court as to require it.

The principal complaint made against the charge is, that the Court told the jury : 1st. "That in such a case as this the rule that one person cannot be the agent of two parties, who have conflicting interests, did not apply."   And 2nd, "that if the jury believed Alston shipped the goods to the care of Bates, he made Bates his agent, and a delivery to Bates discharged the company ; thus, if goods are shipped to the care of the Superintendent of the Georgia Railroad, it makes such superintendent the agent of the shipper, and a delivery to him relieves the company of all liability."

Some criticisms were made in the argument, on other parts of the charge, but it was conceded, and we think properly, that if the two charges we have referred to were properly given, the other errors, if they were such, were not so material as to justify the reversal of the judgment of the Court below, in refusing a new trial.

As to the first point, we doubt if there be any such rule of law, as was contended for, and which it is complained the Judge said did not apply to such a case.   Two parties may always, by *mutual consent,* no matter how diverse their interests, make a third their agent.   It is true, if A have an agent, that agent cannot, *without A's consent,* act as the agent

of B, in a matter in which A's interest conflict with B's. But B, who selects the agent, knowing he is the agent of A, cannot object to take advantage of his own wrong, in giving, knowingly, or the agent a trust, conflicting 'with his duty to A. This is plain common sense, and the every day practice. It is not denied that Mr. Alston knew Bates was the agent of the Express company, and if he *did* make Bates his agent, however the company' might complain, Mr. Alston cannot.

2. Was there evidence to justify the other charge of the Court? We think there was. The charge is justifiable if there was *any* evidence going to show that Alston made Bates his agent, that is, sent his goods to the care of Bates, meaning not to the company but to Bates, as an individual. Bates says he promised Alston to take care of the box, as though it were his own, and there is much in the testimony of both Alston and Bates to show, that the mere *tranship-ment* of the box to Charlotte, would not fufill his intentions. He desired it, when there, to be kept and taken care of. He did not expect it to be delivered to Mrs. Fitzsimmons, on its arrival, but *stored,* until it suited him, or her, to get it. *Prima facie,* such a duty is outside of the business of an Express Company. Its undertaking is to *carry.* It is true, that, as a necessary incident of carriage, there is a duty, as bailee to keep safely, until delivered, but an Express Company does not, *prima facie,* make contracts to keep, independent of the duty incident to their undertaking as carriers. As we have said, there is evidence, from which it was competent for the jury to presume that Alston expected and intended more should be done than simply to carry his box and safely deliver it—that he wanted it *stored, watched, kept,* for an indefinite time, after it reached Charlotte. This duty the jury might presume, from what Bates says, Alston expected Bates, as an individual, to perform. We do not say, the evidence of Alston and Bates proves this, but, it goes to prove it, and, if so, it was proper for the Judge to give to the jury the law to be applied to such a state of facts, if they believed, from the evidence, such a state existed.

But there was more in the evidence than the statements of

Bates and Alston. The box was directed to " Mrs. Fitzsimmons, care of Bates, agent of the Southern Express Company, at Charlotte." We are inclined to think that if the address stood alone, it would justify the charge. The company would be bound to take care of this box, as incident to its duty as carrier, without any such direction. If nothing more was intended, why was anything more said? The simple direction, to "Mrs. Fitzsimmons," would have covered all that, it is *now* contended, was meant. If it had not been intended that a special trust was placed in Bates, why does his name appear? Nobody pretends that there was any custom of the company, or of those who dealt with it, to direct packages thus. It is an unusual and unnecessary addition to the address, unless something *more* was meant than would follow from the simple address to Mrs. Fitzsimmons. If anything more was meant, then Bates was Alston's agent, and a delivery to him complied with the contract.

If Bates kept it in the company's rooms he did so as the agent of Alston, and if he shipped it to Richmond, he did that also as his agent. The cases in 2 Redfield on Railroads, 65, and the case in 16th New York Court of Appeals, 515, are distinguishable from the case at bar in this, that *there* it was in proof that it was *common* to direct goods that way. That when they were designed for a locality not *on the line,* but in the country, on one side or the other, this direction was put there to indicate at what station they should be stopped, and sent inward. Either station, out of two or three, might be chosen, at the option of the consignor. We can easily see how such a custom might arise.

But Charlotte was on the line—it was the very point to which the goods were consigned, and we can see no meaning in putting them in the care of Bates, unless it was intended that *he,* not the company, should take care of them at Charlotte. They were in the care of the company without this. There is nothing in the testimony to hold the defendant's below liable, in their capacity as *carriers.* If they are liable at all, it is as warehousemen, or simply bailees. In that capacity, we think, there was sufficient evidence to justify the

verdict. It is true, the evidence is not conclusive. But it is a well settled rule, that the Court will not disturb the verdict, unless it be strikingly against the weight of evidence.

Assuming that the direction did make Bates the agent of Alston, as mere warehousemen, and that too without hire, the company do not appear to have acted with such negligence as would authorize us, under the circumstances, to say that the verdict shocks the moral sense. It is plain this box was in danger at Charlotte. The company, and other prudent people, were moving their valuables to Richmond, and it would be very hard to hold the defendants below liable, unless they can show clearly what became of the box after it got to Richmond. Public history, informs us of events there, just at that period, which make it very probable what became of it. In the going out of one army, and the coming in of another, in the burning and sacking of a city, a box of silver would hardly escape both fire and thieves.

Judgment affirmed.