Atlee v. Fink.

4. PROMISSORY NOTE: protest: evidence.

---

ATLEE *et al., Appellants,* v. FINK.

1. **Principal and Agent**: IMPLIED POWER OF AGENT. An agent to sell has no implied power to bind his principal by an agreement to pay another commissions for making sales.

2. ———: SECRET CONTRACT OF AGENT WITH ADVERSE PARTY. A dealer in lumber agreed to pay to a builder, who was employed to superintend the erection of buildings for others, and whose duty it was to pass upon accounts presented for materials furnished, but not to make purchases, a commission on all sales of lumber made to the builder's employers through his influence. This agreement was not made known to the employers. *Held,* that it was against public. policy and void.

*Appeal from Jackson Circuit Court.*—HON. S. H. WOODSON, Judge.

REVERSED.

*Tomlinson & Ross* for appellants.

O'Sullivan had no power to appoint a sub-agent at the expense of the plaintiffs. Story on Agency, (6 Ed.) § 387, and note; Ib., §§ 13, 14, 15; 2 Kent Com., (12 Ed.) side p. 633, sub-div. 9, and note; *Paddock v. Colby,* 18 Vt. 485; *Solly v. Rathbone,* 2 Maule & Selw. 299, *et seq; Warner v. Martin,* 11 How. 209; *Cronkite v. Wells,* 32 N. Y. 247. The policy of the law forbids that O'Sullivan, acting as the servant and confidential adviser of the purchasers, should, at the same time, be secretly receiving a compensation from the seller for effecting the sales, and a contract for such compensation is void even if no actual fraud is perpetrated on the purchaser. *Bollman v. Loomis,* 41 Conn. 581; *s. c.,* 15 Am. L. Reg. 75; *Spinks v. Davis,* 32 Miss. 152; *Fuller v. Dame,* 18 Pick. 472; *Wyburd v. Stanton,* 4 Esp. 179; *Jacques v. Edgell,* 40 Mo. 76; *Kanada v. North,* 14 Mo. 615; *Lingle v. Ins. Co.,* 45 Mo. 109; *Tool Co. v. Norris,* 2 Wall. 45; *Fireman's Char. Ass'n v. Berghaus,* 13 La. Ann. 209; Story on Agency, §§ 31, 210, 212, 214, 330, 344; Wharton on Agency, §§ 244, 573, 715, 716; *Oscanyan v. Winchester Arms Co.,* 17 Am. L. Reg. 626; *Harrington v. Victoria Dock Co.,* 7 Reporter 32; *Morison v. Thompson,* L. R., 9 Q. B. 480; *Bartle v. Nut,* 4 Pet. 184; *Reynolds v. Nichols,* 12 Iowa 398; *Walker v. Osgood,* 98 Mass. 348; *Roby v. West,* 4 N. H. 285; 3 Cent. L. J. 263; 3 Wait's Actions & Def., (Ed. 1878) 586, 587, 589; *Childress v. Cutter,* 16 Mo. 24; *Dunlop v. Richards,* 2 E. D. Smith 181; *Farnsworth v. Hemmer,* 1 Allen 494; *Pugsley v. Murray,* 4 E. D. Smith 245.

*J. D. S. Cook* for respondent.

The contract was not inconsistent with Fink's duties

as superintendent of the buildings upon which he was employed. If he had been employed to buy lumber, he would have no right to a commission from the seller, even if he got it at the lowest market price. But he was not so employed. His only duty was to certify the bills. His employers bought the lumber, fixing both the quality and price, and his certificate simply showed that the quantities called for by the bills had been delivered.

HENRY, J.—Plaintiffs sued defendant for balance on account for lumber sold, $497.68. In his answer, defendant admits the purchase, but his defense is, that there is in the account an overcharge of $35, that he is entitled to a credit of $184.36, paid on the account, and that plaintiffs owe him $261, as commission on lumber sold by plaintiffs to defendant's employers, on defendant's recommendation, for which he alleges plaintiffs agreed to pay him a commission of two and one-half per cent. All of these allegations were denied by plaintiffs' replication. The defendant obtained a judgment for $38.73, from which plaintiffs appeal.

The evidence shows that plaintiffs resided at Fort Madison, Iowa, and were engaged in manufacturing and selling lumber; that they established a branch of their business at Kansas City, Missouri, and placed J. O'Sullivan in charge of it, to sell lumber. O'Sullivan testifies that he was employed by plaintiffs to sell their lumber. Samuel Atlee, one of plaintiffs, testifies that O'Sullivan was not authorized to make any agreement to pay commissions to other persons for selling their lumber. The firm paid O'Sullivan a salary of $1,800 per annum. The defendant, Fink, testifies that he, O'Sullivan and W. H. Atlee, (who was not a member of the firm of plaintiffs,) were together when O'Sullivan and defendant made the agreement by which the latter was to receive the commission on sales. O'Sullivan might make to defendant's employers through defendant's influence with them; that his employers paid

him for superintending the erection of the various buildings erected by them, and it was his duty to keep the laborers at work, and see about materials and all details; that his employers would pay no bills for labor or lumber until certified by defendant to be correct; that he never informed them, or any of them, that he was to get a commission on the lumber purchased by them of plaintiffs. This is the substance of the testimony on the only branch of the case which we deem it necessary to consider.

O'Sullivan was not expressly, or by the nature of his employment, authorized to make the contract in question. *1. PRINCIPAL AND AGENT: implied powers of agent.* He was, as he testified, but an agent to sell, and could not delegate that authority to another. Especially was he not authorized to promise a compensation for sales made for the firm by others, which would bind the firm. Story on Agency, (6 Ed.) § 387; *Warner v. Martin,* 11 How. 209.

But it is unnecessary to extend our remarks on that proposition, because, if O'Sullivan had had ample authority to make such a contract, it is contrary to *2. ——: secret contract of agent with adverse party.* public policy to allow the plaintiffs to recover on it. He was employed by others to transact business for them, and they paid no bills for lumber not certified by him to be correct, and for two and one-half per cent commission on sales to his employers, he sold his influence with them to the plaintiffs. He kept them in ignorance of the agreement he had made with O'Sullivan. That agreement was a temptation to him to certify as correct, bills for lumber which might be incorrect, both as to the amount of lumber and prices charged. His compensation could be increased by such conduct, and it is no answer, that nothing of the kind occurred. In *Fuller v. Dame,* 18 Pick. 472, the court said: "The law avoids contracts and promises made with a view to place one under wrong influences; those which offer him a temptation to do that which may affect injuriously the right and interest of third persons." In *Spinks v. Davis,* 32 Miss. 152, the

court said : "It is a sufficient objection to a contract on the ground of public policy, that it has a direct tendency to induce fraud and malpractice upon the rights of others, or the violation or neglect of high public duties." One employed by another to transact business for him, has no right to enter into a contract with a third person, which would place it in his power to wrong his principal in the transaction of the business of the latter, and which would tempt a bad man to act in bad faith toward his employer. The interests of the defendant's employers, and those of plaintiffs, as buyers and sellers, were antagonistic, and defendant could not serve two masters in a matter in which there was such a conflict in their interests. It makes no difference that defendant was not employed to purchase the lumber for his employers. It is enough that it was his duty, under his employment, to examine and certify to the correctness of the lumber bills.

Under this view, it is wholly immaterial whether the agreement made by O'Sullivan with the defendant was ratified or not by the plaintiffs. The ratification of the contract would not have eliminated the element which rendered it invalid. The trial court entertained a different view of the subject, and embodied, in instructions given, that erroneous view, and refused instructions asked by plaintiffs which declared the law as herein announced, and its judgment is, therefore, reversed and the cause remanded. All concur.