Eugene DeSteiger, Respondent, v. William Hollington, Appellant.

### April 13, 1885.

Agency—Double Employment—No Recovery if one Party Kept in Ignorance of it.—The cases are nearly if not quite uniform that where a double employment exists and is not known to both principals, no recovery can be had against the party kept in ignorance, and the result is not made to turn on the presence or absence of designed duplicity and fraud, but is a consequence of established policy. The rule is not intended to be remedial of actual wrong, but preventive of the possibility of it. But if the double agency is known to both parties and acquiesced in by each, with a full knowledge of the true position of the agent, a contract made by the principals, through such an agent, is binding on both.—40 Mich. 375; 71 Penn. St. 250; Story on Agency, 31 and 210.

Appeal from Clinton Circuit Court, Hon. Geo. W. Dunn, Judge.

*Reversed.*

The facts sufficiently appear in the opinion of the court.

William Henry, for the appellant.

I. In cases of this character when the contract is denied and the question is as to the contract having been made, no evidence can be received except such as the law requires, i. e., written evidence. — *Wright* v. *Weeks*, 25 N. Y. 153; *Hook v. Turner*, 22 Mo. 333; *Wildbahn* v. *Robideaux*, 11 Mo. 660. Neither party can connect himself with it by parol evidence.—Wood on Master and Servant, 380; Browne on Frauds, sect. 372; *Wright v. Weeks, supra.*

II. In order to constitute a valid contract, the parties must agree to the same subject matter in the same sense, and if a party has been misled in regard to any matter which is material to his rights or interest, the contract is void for want of mutuality of agreement.—*Erwin* v. *Bk. of Ky.*, 5 Low, Ann. 1; *Kyle v. Kavanaugh,* 103 Mass. 356; *Wright v. McPike,* 70 Mo. 175, and cases there cited.

III. What is to be presumed to have been in contemplation of the parties at the time the contract was made, is the measure of damages for the breach.—Sedgw. on Meas. Dam., 6th ed. 179. Neither remote nor speculative damages are allowed for a mere breach of contract. —*Hughes* v. *Hood*, 50 Mo. 250; *Taylor v. McGuire*, 13 Mo. 517.

IV. A court has no right to adjudge the recovery of more than 6 per cent. interest on the amount of the principal judgment, except when the suit is founded upon a contract expressly providing for a greater rate.—Rev. Stat., sect. 2725.

V. The court erred in refusing instructions asked by defendant, and in admitting incompetent and misleading testimony, especially as to the measure of damages.

T. E. TURNEY and S. H. CORN, for respondents.

I.   The memorandum offered in evidence is sufficient under the statute of frauds, and was properly admitted in evidence.— *Willey* v. *Roberts*, 27 Mo. 388; *Moore* v. *Mountcastle*, 61 Mo. 424. The description of the property is precise enough for identification, and the contract, being declared on according to its legal effect, was construed by the court and properly admitted.—*Jones* v. *Louderman*, 39 Mo. 290.

II.   A principal may sue on a contract made by an agent in his own name, and he is not precluded by the statute of frauds from connecting himself with it by parol testimony.—Story on Agency, 270; *Briggs* v. *Munchon*, 56 Mo. 469.

III.   When a vendor refuses to convey, the vendee not having paid the purchase money, is entitled to the full value of the premises at the time of the breach of the contract of sale, *minus* the purchase money, if that value exceeds the amount thereof.—*Kirkpatrick* v. *Downing*, 58 Mo. 32.

IV.   The case was fairly tried under proper instructions, and no illegal testimony went to the jury. The allowance of 10 per cent. interest was a clerical error, and may be corrected here. This is not an error against the right and justice of the suit, and does not alter the issues between the parties on the trial, and may be amended by this court.—Rev. Stat., sects. 3582 and 3583. Moreover the attention of the trial court was not called to it by the motion for new trial, nor was any motion in arrest filed; and this court will not reverse unless the error affected the *merits* of the action.

Opinion by ELLISON, J.

This is an action to recover damages from defendant for failure to comply with contract of sale of land, being all of the west part of lot No. 8 in block No. 55 in the town of Cameron.

The suit is based on the following written paper, which was introduced in evidence by plaintiff as the foundation of his claim :

"Cameron, Mo., Feb. 23d, 1882.

"Received of H. S. Beery, the sum of one hundred dollars in part payment of the west part of lot 8 in block 55, including all that part of said lot west and adjoining the brick building now occupied by Hamer & Shean, druggists, which is situated on the east side of the said lot 8 in block 55—total purchase price being $1,500, fifteen hundred dollars.

William Hollington."

It appears from the testimony that the defendant was the owner of the property and desired to sell it to a man living at Kidder who was intending to erect a brick business house thereon; (whether he would sell, or wanted to sell to any one else is a question not agreed in the evidence). He employed, as he states, one H. S. Beery, as his agent to make the sale, authorizing him to sell it for $1,500.00. Beery claims that his employment to sell as agent of defendant was general, and not confined to the "Kidder man." Beery himself, who was introduced by plaintiff, testified:

"I live in Cameron, Mo. I am a real estate agent there. I was employed by Hollington to sell a lot; the west part of lot 8 in Cameron; I believe it is in block 55."

"Defendant signed this paper—this name at the bottom is his signature."

"I made the sale to Doc. DeSteiger as Hollington's agent. It was my money I paid. DeSteiger said he would take the property, but had gone away; so I paid one hundred dollars to Hollington at the time I took the the receipt. I had instructions from plaintiff to buy at $1,500. About two days after the sale I presented to Hollington $1400, for the balance of the price of the property. He refused to take it; said the property was his wife's property. Said he would make a quit claim deed to the property. Hollington knew I was buying for some one else, and not for myself. Don't think he knew who I was buying for. The contract would have been

different if I had not been going away from town before the bank opened ; that is, I would have taken the receipt in the name of DeSteiger. Plaintiff furnished me the $1400 I offered the defendant. I am acquainted with the property ; it is worth $1800 to $2000.''

All of the foregoing testimony of the witness was objected to by the defendant but the court overruled the defendant's objections, and admitted the testimony against said objections. To which ruling of the court the defendant then and there excepted at the time.

On cross-examination, the witness testified as follows :

''I don't know what I told Hollington about $1500 being more than the property was worth ; probably told him that was more than it was worth. I was interested in getting it for sale at a low figure so I could make sale of it. Hollington tendered back to me the $100 I paid him. I regarded the property cheap at $1500. Hollington gave it to me to sell a week or ten days before it was sold. I was about to effect a sale of the whole property to a Kidder man. At the time of the trade I intended the property for the plaintiff. The agreement was written by James McCray, my partner. He was present when it was signed. At the time he gave the property to me to sell, there was a frame building on it. It was reserved in the sale. It was to be moved off. Hollington said nothing about reserving a stairway. At the time of the sale it was understood that defendant was to have the building. Without the building the property was worth $1800 or more. Hollington did not to my recollection place any restrictions on me as to who I would sell the property to. ''

James McCray, being produced, sworn and examined on the part of the plaintiff, testified as follows : ''I wrote the agreement, and I was present when the defendant signed it. At the time Hollington gave the land to us to sell there was a frame building on it. At the time of the sale I think the property was worth $1800.''

Cross-examined.—''I think when Hollington came over to our office a day or two after the sale, he objected to

the sale. Said he understood DeSteiger was to get the property. Said he did not want DeSteiger to have it, and said something about a Kidder man that was to have it. He said something about what he thought, or about the Kidder man's having it, but I cannot tell what it was now. Have forgotten what he said about the Kidder man's agreement, but there was something said about the Kidder man in connection with the agreement. Defendant met me and we had some conversation after the sale, but I cannot remember what was said. I don't remember that he said the property was to be sold only to the Kidder man. He might have said so. Can't remember what he did say about it. At the time of the contract nothing was said as to who was to get it."

The following instruction, No. 8, was offered by defendant and refused by the court, and duly excepted to :

8. "Under the law, H. S. Beery could not act as agent for both defendant and plaintiff at the same time without the consent of both parties, and neither the receipt or writing in evidence, nor any understanding or agreement at the time of signing the same will be binding as between defendant and plaintiff, unless the jury find from the evidence that the defendant had at the time full knowledge that said Beery was acting for and in the interest of the plaintiff."

The $100.00 paid at the time of signing the receipt was returned to plaintiff at the trial.

There are a great many exceptions by defendant in the course of the trial, as to the proper evidence in the cause, none of which we deem to be well founded. The contract is sufficiently stated in the writing to take the case out of the statute of frauds. There is authority holding sufficient, paper with much less in it than this one. — *Willey* v. *Roberts*, 27 Mo. 388 and 31 Mo. 212; *Moore* v. *Mountcastle*, 61 Mo. 424; *Brigg* v. *Muncheon*, 50 Mo. 407. The fact that the contract was made in the name of Beery would not prevent it being shown, that it was as the agent of De Steiger, nor prevent his recovering thereon in his own name.

That a contract made in name of agent may be enforced by the principal, is a well settled proposition of law, and there is nothing in a case involving the statute of frauds to vary it from the general rule. The court's ruling on defendant's objection to the testimony was proper. When considered with the court's explanation of its object, we see no reason why the surroundings, situation and use of the property immediately about this in dispute, would not be a very fair way, among others, to ascertain its value. The situation, location and surroundings of property, especially in towns and cities, is one of the very best tests of its value.

We are of the opinion, however, that the 8th instruction offered by defendant should have been given. There was evidence tending to show that in making the purchase, Beery was acting as agent for plaintiff; and, indeed, plaintiff's whole theory of right to recover on the writing is, that it was made in the name of his agent and for his benefit. The evidence of Beery, as we have quoted, shows that he was employed by defendant to sell the lot; that he sold it as defendant's agent; that he sold it for $1500.00, when he knew at the time it was worth $1800.00 or $2000.00, and that at the same time he was telling defendant $1500.00 was more than it was worth. We then have Beery acting as agent for both parties, his conduct, in this particular, giving evidence of the deep wisdom of the law in declaring such act fraudulent and of no effect. Agency or employment for two parties in antagonistic interests, is not a worthy position to occupy. It is not possible for a man to serve two masters, with opposing interests, honestly, at the same time; the rights of one, or the other, or both, will necessarily suffer. The temptation for wrong is too great for ordinary human nature. So jealous is the law as to the relation between principal and agent, that in passing on questions of this character, arising between them, the mere fact of the discovery of no actual fraud or bad faith, does not relieve the case in the least. "The cases are nearly if not quite uniform, where the double employment exists and is not known,

No recovery can be had against the party kept in ignorance and the result is not made to turn on the presence or absence of designed duplicity and fraud, but is a consequence of established policy."—*Scribner* v. *Collar,* 40 Mich. 375. The same principle is well expressed in the case of *Everhart* v. *Searle* (71 Pa. St. 256). It is said in that case that, "it matters not that there was no fraud meditated and no injury done; the rule is not intended to be remedial of actual wrong, but preventive of the possibility of it." And to the same effect is *Rice* v. *Wood* (113 Mass. 133). It is there pointedly stated that contracts which are opposed to public policy cannot be enforced; and a contract by which one is placed under a direct inducement to violate the confidence reposed in him by another is of this character. And so it is well said that "the ground on which this disqualification rests, is no other than that principle which dictates that a person cannot be both judge and party. * * The danger of temptation from the facility and advantage for doing wrong which a particular situation affords, does, out of mere necessity, work a disqualification."—8 *Tomlins* v. *Brown,* 72; Judge Story in his work on Agency, in general terms the same doctrine, sects. 31, 210, 211. But while this is a well established rule of law, it is to be understood to exist with this qualification: that if the double agency is known to both parties, and acquiesced in by each, with a full knowledge of the true position of the agent, a contract made by the principals through such an agent is binding on both.—*Alexander* v. *The North Western Christian University,* 57 Ind. 466; *Pugsley* v. *Murray,* 4 E. D. Smith 245; *Rice* v. *Wood,* 113 Mass. 133; *Rowe* v. *Stevens,* 53 N. Y. 621; *Meyer* v. *Hauchett,* 39 Wis. 419; *Lynch* v. *Fallon,* 11 R. I. 311.

Defendant testifies that he let the agent have the property to sell to the "Kidder man" and that he supposed the sale was being made to him. His whole testimony rebuts the idea that he knew his agent had proven recreant to the trust reposed in him. It is not reasonable to suppose he would have given an attentive ear

to Beery's statement that $1500.00 was more than the property was worth, if he had known that Beery in fact thought it was worth eighteen or twenty hundred dollars.

Manifestly defendant should have the opportunity of testing these disputed questions before a jury. If it should turn out to be a fact that Beery's double capacity was unknown to defendant, it would be a fraud on him to permit the contract to be enforced by plaintiff; or that he should be permitted to recover damage on account of it. The other judges concurring, the judgment is reversed and the cause remanded.