JOHN ROBINSON ET AL., Appellants, v. SAMUEL M. JARVIS ET AL., Respondents.

### Kansas City Court of Appeals, April 11, 1887.

1. CONTRACT—OBLIGATION OF, AS TO TERMS, ETC., IN ABSENCE OF FRAUD.—When the terms of a written instrument are clear, plain, and unmistakable, and neither fraud nor misrepresentation is shown, in procuring or inducing the signature, the signer is bound by what he signed, as fully as if he had read it. He is *presumed* to have read the writing, and is bound by its terms.

2. PRINCIPAL AND AGENT—DOUBLE AGENCY—CIRCUMSTANCES JUSTIFYING.—It is a general rule that one cannot act as agent for both principals in a contract. But there is this *qualification:* if the double agency is known to both parties, and acquiesced in by each, with a full knowledge of the true position of the agent, a contract, made by the principals through such an agent, is binding on both.

APPEAL from Mercer Circuit Court, HON. G. D. BURGESS, Judge.

*Affirmed.*

Statement of case by the court.

The defendants, Samuel M. Jarvis and Rolan R. Conklin, were partners under the firm name of Jarvis,

Conklin & Co., doing business at Kansas City, as loan brokers. One Webster Ballew was acting as the defendants' agent in Mercer county, this state, soliciting loans for them; the plaintiffs are husband and wife; John Robinson, solicited by Ballew, made application to the defendants for a loan of five hundred dollars; Ballew sent the application to the defendants; the application, after an inspection of the real estate offered by Robinson as security had been made by another agent of defendants', employed for that particular purpose, was approved; the note, and other papers, were all drawn by defendants, and sent to Ballew for execution by the plaintiffs; the papers were all duly executed by the plaintiffs; among other papers thus drawn and made out by defendants, ready for execution by the plaintiffs, was the following:

"To be signed by John Robinson and wife.

"KANSAS CITY, Mo., February 1, 1883.

"Pay to Webb Ballew, or order, the full amount due us on the loan negotiated by you for us, with A. W. Berkey, and this shall be your receipt therefor.

"To Jarvis, Conklin & Co.,

"Kansas City, Mo.

"NOTE—This order is to be signed by the parties borrowing, at the time of executing the papers, and must be sent to us with note and abstract, the abstract showing the mortgage filed for record. Drafts or currency will be remitted by return mail, or express, as requested."

This paper was duly signed by the plaintiffs, in the space indicated for their signatures; Ballew presented said paper, with the others, for the signatures of the plaintiffs; John Robinson testified, in reference to the execution of said paper, as follows:

"I and my wife, Elizabeth, came down here to Princeton to attend to the business, and we went to Mr. Ballew's office, and we signed a good many papers; I

did not have my spectacles with me, and I could not see to read them; I tried to read some of them, but could not make it out, and I gave it up; we signed just what Mr. Ballew told us to sign, to fix up the papers to get the loan; I did not, knowingly, sign any order for Jarvis, Conklin & Company to pay the money on my loan to Webb Ballew, for me; if I signed any order of that kind, I did not know what it was; I left the papers with Ballew, and he said the money would soon come on; none of the papers were read to me, nor did I hear them read."

There was no evidence tending to show any fraud or misrepresentations used by the defendants, or any of their agents, to induce the plaintiffs to sign the said paper; upon the said paper being presented, by Ballew, to the defendants, they paid to him the full amount due to plaintiffs on the loan; this action was tried by both parties as an action for the recovery, by plaintiffs from the defendants, of the amount due to the plaintiffs on such loan; it was admitted by counsel for plaintiffs, on the trial, that the defendants had made the payment above stated to Ballew; the court instructed the jury that they must find for the defendants. The plaintiffs have appealed to this court.

H. J. ALLEY and HYDE & ORTON, for the appellants.

I. The defendants are responsible for the fraud and misfeasance of Ballew, which is to be imputed to *them*, whose agent he was. The fraud and misfeasance of Ballew was done *within the scope of his employment*, whether we consider the loss resulting from fraudulently procuring plaintiffs' signatures to the order, or from his embezzlement of the money entrusted to him by defendants, to transmit to plaintiffs. *Jewet v. Carter*, 13 Mass. 337; Story on Agency [6 Ed.] sects. 126-7; *Harriman v. Stowe*, 57 Mo. 93.

II. The *agency* of Ballew may be shown by the acts of the parties. In this case he was the *recognized*

agent of the defendants.  *Security Co. v. Addison*, 15 Neb. 335.

III.   It was not competent for Ballew to change the position he occupied to the parties, without making such change known to the parties.   *Kausal v. Ins. Co.*, 31 Minn. 17; *Ins. Co. v. Myers*, 55 Miss. 479; *Gau v. Ins. Co.*, 43 Wis, 108; *Sullivan v. Ins. Co.* (S. C. Kansas), Am. & Eng. Corp. Cas., May, 1886; 89 Pa. St. 464; *Boether v. Ins. Co.*, 47 Iowa, 255.

IV.   The duty of defendants did not terminate with procuring the order.   Ballew was *still their agent* to transmit the money to plaintiffs.   55 Miss. 479.

V.   The court should have given the *instruction*, as prayed by plaintiffs, and *refused* that of defendants. The error complained of is in the ruling of the court in giving to the jury the instructions prayed by defendants, and refusing plaintiffs'.

VI.   The *acts* of Ballew bind the defendants, notwithstanding *private* instructions, unless such instructions are *made known* to plaintiffs.   *Ins. Co. v. Brabst*, 18 Neb. 528.   And such liability will extend to the *apparent* authority conferred on the agent.   *Webster v. Wray*, 17 Neb. 580.

CRITTENDEN, McDOUGAL & STILES, for the respondents.

I.   The plaintiffs having failed to *controvert* in their reply the allegation of the answer that defendants paid the money to Ballew *upon the written order of plaintiffs*, that allegation must be taken as true (Rev. Stat., sect. 3545), and the answer having further charged that plaintiffs executed the order, its execution was properly adjudged confessed because not denied under oath.   Rev. Stat., sect. 3653.

II.   No *fraudulent* representations, even upon the part of Ballew, were shown; and the mere fact that plaintiffs did not " *knowingly* " sign the order does not

excuse them. It was their *duty* to know what they were signing. 2 Whart. Evid. sect. 1028, and cas. cit. notes.

III. Having *directed* the payment to Ballew, plaintiffs made him *their agent* to receive the money. That he did not pay it to his principals was no fault of defendants, and the case presented by the record calls for the application of the trite maxim, that "where one of two innocent persons must suffer by the wrong of another, the one who enables such other to commit the wrong must bear the consequences." *Spraights v. Hawley*, 39 N. Y. 441, 448; *Whittemore v. Obear*, 58 Mo. 280, 286.

HALL, J.—The execution by the plaintiffs of the written order addressed to the defendants, directing them to pay the amount due to plaintiffs to Ballew, stood admitted under the pleadings. The answer alleged the execution of said order by the plaintiffs; the reply was not under oath. Rev. Stat., sect. 3653; *Rothschild v. Frensdorf*, 21 Mo. App. 320.

There was neither fraud nor misrepresentation on the part of the defendants or any of their agents inducing the plaintiffs to sign the said order, and the terms of it were clear, plain and unmistakable. In such a case the plaintiffs were bound by what they signed as fully and as completely as if they had read it. They are presumed to have read the order and are bound by its terms. *Ins. Co. v. Fletcher*, 117 U. S. 533. On this subject it is said by Mr. Wharton: "Thus, a party who neglects to read a document he signs, cannot have it set aside because it turns out to contain provisions contrary to his intentions; and, as a general rule, where there has been no misrepresentation, and where there is no ambiguity in the terms of the contract, the defendant cannot be allowed to evade the performance of it by the simple statement that he has made a mistake." 1 Wharton on Cont., sect. 196, and authorities cited; see, also, *Rothschild v. Frensdorf, supra*, and *Taylor v. Fox*, 16 Mo. App. 527. The order had the effect to make

Ballew the plaintiffs' agent for receiving the amount due to them from the defendants. The order was duly executed by them and was binding upon them, if it was competent for the plaintiffs to make Ballew their agent for that purpose. It is a general rule that one cannot act as agent for both principals in a contract. "But while this is a well established rule of law, it is to be understood to exist with this qualification: That if the double agency is known to both parties, and acquiesced in by each, with a full knowledge of the true position of the agent, a contract made by the principals through such an agent is binding on both." *DeSteiger v. Hollington,* 17 Mo. App. 389. It must be presumed that the plaintiffs read the order and were aware of its provisions, and hence, if Ballew is to be considered as having acted under a double employment, his appointment by the plaintiffs as their agent to receive the money was binding upon them. In *Fitzsimmons v. Southern Express Co.* (40 Ga. 330), it was held: "Where an express company receives goods directed in a peculiar manner to the care of its agent at a specified place, it will be assumed that the shipper intended to make such agent his own agent for receiving the goods, and the express company is discharged from responsibility in delivering the goods to such agent." The court, in speaking of the direct question under consideration now, said: "Two parties may always, by mutual consent, no matter how diverse their interests, make a third their agent. It is true, if A have an agent he cannot, without A's consent, act as the agent of B, in a matter in which A's interest conflicts with B's. But B, who selects the agent, knowing he is the agent of A, cannot object to take advantage of his own wrong in giving, knowingly, to the agent a trust conflicting with his duty to A. This is plain common sense, and the every day practice. It is not denied that Mr. Alston knew Bates was the agent of the express company, and if he *did* make Bates his agent, however the company might complain, Mr. Alston cannot."

But, in our opinion, Ballew's agency was not dual, but was single, so far as concerned the receiving of the money from the defendants. With the knowledge of the plaintiffs, the defendants had the right to limit the authority of their agent, Ballew. *Ins. Co. v. Fletcher, supra.* The order had the effect to make Ballew, who was acting generally as agent for the defendants, the agent only of the plaintiffs in receiving the money. Payment to Ballew was thereby made payment to plaintiffs. Had the plaintiffs appointed one of the defendants' agents, in no wise connected with their loan, as their agent for receiving the money, it could not have been said that such appointment created a dual agency. The agency for receiving the money would have been single throughout. The fact that Ballew had been acting for defendants in the making of the loan made no difference. Thus, in *Caldwell v. Keystone Iron Co.* (36 Mich. 51), it has been held, that there is no principle of law which precludes a person from acting as agent for two principals ; and that it is competent for a person in the employment of the vendor to accept, by the consent of all parties, as the agent of the vendee, the delivery of the property sold ; and that the agency of the person, concerning the delivery of the property in such case, would not be dual, but single throughout. We are clearly of the opinion that it was competent for the plaintiffs to make Ballew their agent for receiving the money. We have examined the authorities cited by the plaintiffs, but they are not in point.

The judgment is affirmed. All concur.