ROBERT L. WINTER, Respondent, v. THOMAS CAREY, Appellant.

Kansas City Court of Appeals, December 2, 1907.

1. BROKER: Dual Agency: Scienter: Commission. The law recognizes that in general, human nature is too weak to assume faithful service for an agent serving opposing parties without their knowledge and consent and has absolutely forbidden such dual position, and if taken the agent is denied any redress.

2. ———: ———: ———: ———: Public Policy. Good faith on the agent's part and lack of harm to his principal will not prevent an application of the rule for it is founded on public policy and is preventative rather than remedial. [Cases considered.]

3. ———: ———: ———: ———: ———: Instruction. Whether after the conclusion of the transaction an agent of one party may receive a gratuity from another, *quaere;* but an agreement for such gratuity pending the negotiations cannot be tolerated; and an instruction is condemned.

4. ———: ———: ———: ———: ———: ———. Circumstances of the case under judgment present a condition of affairs altogether uncommon and amounts to the agent's acceptance of pay from an adversary party without the knowledge of the principal and cannot be approved.

Appeal from Jackson Circuit Court.—*Hon. James H. Slover,* Judge.

REVERSED.

*Bowersock & Hall* for appellant.

(1) An agent or broker cannot recover a commission from his principal, when he has received pay from the other party without his principal's consent. Mechem on Agency (1 Ed.), secs. 455, 972; DeSteiger v. Hollington, 17 Mo. App. 382; Robinson v. Jarvis, 25 Mo. App. 421; Reese v. Garth, 36 Mo. App. 641; Chapman v. Currie, 51 Mo. App. 40; Norman v. Roseman, 59 Mo. App. 682; McClure v. Ullman, 102 Mo. App. 697; Atlee v. Fink, 75 Mo. 100; Scribner v. Collar, 40 Mich. 375; Walker v. Osgood, 98 Mass. 348; Rice v. Wood, 113 Mass. 133; Meyer v. Hanchett, 43 Wis. 246; Warrick v. Smith (Ill.), 27 N. E. 709; Finch v. Redding (Pa.), 26 Atl. 368; Wadsworth v. Adams, 138 U. S. 380. (2) This is true even where there is a custom authorizing such double charges. Farnsworth v. Hemmer, 83 Mass. 494. (3) And it is immaterial that both parties knew of the double charge, if they did not consent to it. Rice v. Davis (Pa.), 20 Atl. 513.

*Ball & Ryland,* for respondent, filed an argument.

ELLISON, J.—Plaintiff is a real estate agent and seeks to recover from defendant $1,250 as commission for leasing for a long term certain of defendant's real estate in Kansas City to one Medes. He recovered judgment in the trial court for that sum with interest.

It is alleged in the petition that after plaintiff "had procured the arrangement and agreement to be made between defendant and Medes, and in order to save defendant as much of the costs and charges, by way of commission, as possible, he arranged and agreed with said Medes that the latter should pay of the commission charges the sum of one thousand dollars." It is then alleged that plaintiff "upon the consummation of the lease and the execution and delivery of the same, rendered to the defendant a bill and account for defend-

ant's part of said commission, of twelve hundred and fifty dollars." It is further alleged that said charge was much less than usual and customary.

There was evidence in plaintiff's behalf tending to show that $2,500 would be a reasonable charge for negotiating the lease. At the close of the evidence defendant submitted a demurrer thereto which the court refused. The court gave for plaintiff two instructions which based plaintiff's right to recover upon the question whether he rendered the services "in good faith." In a third instruction it was declared as follows: "Although the jury may find and believe from the evidence that during the negotiations Medes agreed with plaintiff to pay him and afterwards did pay him $1,000 on account of commissions, yet if the jury further find and believe from the evidence that plaintiff made this arrangement and accepted this payment with the intent and purpose of reducing the charge and commission which he was entitled to charge as defendant's agent, then the fact of such agreement with and payment by Medes would constitute no defense to this suit, although defendant was not informed of such fact until afterwards."

There is scarcely a rule of law which has received more uniform approval than that an agent cannot serve the opposing party without the knowledge and consent of his principal. The law, recognizing that, in general, human nature is too weak to assure faithful service in such circumstances, has absolutely forbidden such dual position, and if it be taken, the agent is denied any redress. [DeSteiger v. Hollington, 17 Mo. App. 382; McClure v. Ullman, 102 Mo. App. 697; Atlee v. Fink, 75 Mo. 100; Scribner v. Collar, 40 Mich. 375; Walker v. Osgood, 98 Mass. 348; Rice v. Wood, 113 Mass. 133; Mechem on Agency, secs. 455, 972.]

The foregoing authorities disclose that good faith on the part of the agent and lack of harm to his princi-

pal will not interfere with application of the rule, for it is founded in public policy. And so it is expressly decided by the Supreme Court in Atlee v. Fink, supra. In Everhart v. Searle, 71 Pa. St. 256, it is said that "it matters not that there was no fraud meditated and no injury done; the rule was not intended to be remedial of actual wrong, but preventive of the possibility of it." In McClure v. Ullman, 102 Mo. App. 703, Judge BLAND said that "The temptation to commit fraud is too great to permit one to act as agent for both buyer and seller. This dual relation, if unknown to the seller, makes the contract absolutely void because against public policy."

The argument in plaintiff's behalf may be regarded as suggesting two views, either of which, it was said, ought to place his case outside the rule and sustain the judgment. One is that after a deal between antagonistic parties has been closed, the agent of one may accept a gratuity from the other. We do not intend to dispute the proposition,—it is not in this case,—that *after* the deal between opposing parties has come to an end, an *absolute gratuity* might be accepted by an agent from his principal's antagonist in the deal without transcending the rule of law we have stated. There may be exceptional circumstances where such an act could be fully explained and justified; for, otherwise, if not fully explained by the agent, his situation with a discerning court and jury would probably be embarrassing.

But that is not this case. For here, while not directly admitted, yet it appears by the testimony of both plaintiff and Medes that before the agreement had been closed the former had demanded of the latter $1,000 as commission and the latter agreed to pay it. Plaintiff testified that the amount of the rental per year had been agreed upon before he asked Medes to pay him a commission, but his entire evidence taken together shows that the negotiations were not at an end. Medes

testified that the rental might have been agreed upon, but he was certain that the commission was asked of him long before the negotiations leading up to a complete agreement had been reached. The mere agreement on the amount of the annual rental in a lease of this kind which involves the building of a house and a great variety of important considerations and stipulations is far from being the whole deal. Plaintiff's duty to this defendant did not cease with the agreement between the parties as to one point in the lease.

But we need not discuss the evidence on this head, for it is conceded in plaintiff's third instruction above set out, that it was during the negotiations for the lease that plaintiff and Medes made their agreement as to the commission. The jury was there instructed that the agreement, though made "during the negotiations" would not prevent a recovery.

Plaintiff relies much on the case of Carr v. Ubsdell, 97 Mo. App. 326. In our opinion that case does not aid him. There was no plea or defense of dual agency in that case. The defense was that Carr was the agent of the buyer *only* and therefore the seller was under no obligation to pay him a commission. The evidence in Carr's behalf tended to show that he was not the buyer's agent at all and the court sitting as a jury accepted that view. The instructions in the defendant's behalf did not submit the dual agency theory, but were confined to the theory of agency for the seller only; and the plaintiff did not ask any. It is true that the evidence in the case showed that *after* the whole transaction had been completed and come to an end, the buyer offered the agent $250, which the agent at first refused on the ground that he was to get his commission from the seller; but with the understanding that he was to get his compensation from the seller, he finally accepted it. The St. Louis Court of Appeals in referring to this, speaks of the rule of double agency and states that it

was "not necessary to attempt to define the apparent exceptions to the general rule that an agent may not act for two masters in the same transaction." And the court adds that "such of those so-called exceptions as are valid rest upon ground outside the true province of the rule itself and are sustained because its underlying precept of good faith has not been violated, as explained in Scribner v. Collar, 40 Mich. 375." That it was not meant by this to say that good faith would justify double agency is apparent, especially when we consider that Scribner v. Collar is a clear and instructive case refusing to allow good faith and absence of fraudulent purpose to legalize a claim where there is double agency. The Court of Appeals did not give the construction to Carr v. Ubsdell that this plaintiff seeks to have us give it, for the subsequent case (already cited) of McClure v. Ullman, 102 Mo. App. 697, decided by that court, recognizes the rule as founded on public policy and not as controlled by the good faith of the agent.

The case of Campbell v. Yeager (Neb.), 49 N. W. 181, is likewise called to our attention. There also the buyer "gave" to the agent of the seller $100 *after the transaction was completed.*" And there also the defense of dual agency was not made, but it was alleged in the answer that the agent was the agent of the buyer. It was held that if he was not the agent of the buyer, his acceptance of the money from the buyer, after the transaction was at an end, would not defeat his action against the seller.

While, as we have already intimated, one's adversary in a sale or exchange, being a free agent, may, after the transaction is over with, make a gift to the agent of the other property, yet it must be admitted by all persons of common understanding that it has a bad look, unless its exceptional character is explained by the act itself, or by the peculiar circumstances which prompted it. Men do not commonly give their money

away except in charity, benevolence or other good purpose. If a gift cannot be traced to promptings of this nature, we are powerless to shut out from ourselves the spontaneous query, *why* was it made?

Referring back to our statement of the allegations of the petition as to plaintiff's claim, it must be conceded that, in connection with the second view of his argument, they present a condition of affairs altogether uncommon. It is alleged, and so argued, that in order to "save" defendant on his debt or obligation to the plaintiff, he required Medes to pay him one thousand dollars. It is not said in the petition that defendant knew of this effort in his behalf and the uncontradicted evidence shows that he did not. It seems strange that plaintiff would render defendant such valuable service without any request to do so and not advise him of it. More than that, it appears by the evidence of plaintiff himself that after the lease was closed, he informed defendant that he "expected to charge a reasonable commission for making the deal," yet he did not tell him that he then had Medes' agreement to pay nearly one half of it. And when he afterwards mailed to defendant his bill for commission (the amount here sued for) he still did not mention his agreement with Medes, and there was no intimation that it was not the full account. Why so important a matter should have been kept from defendant is not explained. To say that it was done to save one thousand dollars to defendant when he had made no request for such service and knew nothing of it, must be regarded as a mere evasion, and certainly has no legal basis. It was clearly accepting pay from the adversary party without the knowledge of his principal. It could just as well be said that a lawyer, without the knowledge of his employer, could, in the course of a settlement of important litigation, approach the opposite party and receive a fee from him under the guise of not wanting to make a full charge against his client. It

must be clear to every one that to permit proceeding of the nature here claimed by plaintiff, would result in nullifying one of the plainest and most salutary rules of law.

The demurrer offered by defendant's counsel should have been sustained. The judgment will therefore be reversed. All concur.